DANIEL S. HARRIS *et al.*

*v.*

THE BOARD OF SUPERVISORS OF WHITESIDE COUNTY *et al.*

*Filed at Ottawa November 20, 1882—Rehearing denied March Term, 1883.*

1.  CONSTITUTIONAL LAW—*limit of legislative power.* The question of legislative power and its extent depends on the limitations contained in the constitution. When a State is created it is invested with complete sovereign power, unless restricted by constitutional limitation.

2.  By section 1, acticle 4, of our constitution, full, unlimited and uncontrolled legislative power is conferred, and may be exercised unless limited by other provisions of that instrument or by the Federal constitution.

3.  COUNTIES—*are public bodies, and their property held for the public.* Counties are mere political divisions of the State, as a convenient mode of exercising political, executive and judicial powers of the State. They are wholly public in their character, and are a portion of the State organization, and all their powers are conferred and duties imposed by the constitution and the statutes of the State. They are public, and all the property they hold is for the public use. It belongs to the public, and the county is but the agent invested with the title, to be held for the public.

4.  SAME—*property of, subject to legislative control.* The property of a county being held for the public, it is under the uncontrolled power of the General Assembly, as it is not restricted or limited in its absolute control over the same. A county can neither hold nor dispose of property except by constitutional or legislative authority, and the legislature has the power to sell or dispose of it without the consent of the county authorities.

5.  SAME—*legislative direction to county to reconvey property to donors.* Certain parties, to procure the location of a county seat at a certain place, made donations to the county, both to acquire the title to the land for the town site and to erect the county buildings. In 1857 an act was passed, under which the county seat was removed, and which provided that in case of such removal the board of supervisors should convey the court house and block of land upon which it was erected, and all other lands and town lots theretofore donated to the county for the purpose of erecting public buildings, to the parties who originally conveyed said property to the county, or to their legal representatives, in proportion to the donation made by them, respectively, for the purpose of procuring said lands and erecting such court house: *Held,* that such act conferred upon and vested the equitable title in the donors, and their representatives, in the proportion each had originally contributed, and that the county authorities could not lawfully refuse to make the conveyance to them accordingly, and upon their refusal so to do a court of chancery would compel the conveyances to be made.

APPEAL from the Circuit Court of Whiteside county; the Hon. JOHN V. EUSTACE, Judge, presiding.

Messrs. KILGOUR & MANAHAN, for the appellants:

This preëmption right of the donors of the town site was a right well known and defined, and regarded by the laws of both the United States and of this State, (*Bruner et al.* v. *Manlove*, 3 Scam. 339,) and right to preëmpt may pass by deed or other transfer. (*Delaney* v. *Burnett*, 4 Gilm. 454.) The purchaser of this right is regarded as a legal representative. (*Delaney* v. *Burnett, supra; Phelps* v. *Smith*, 15 Ill. 572.) Parties entitled to preëmptions are protected by law. *Baty et al.* v. *Sale*, 43 Ill. 351; *Lester* v. *White's Heirs*, 44 id. 464.

Under the act of 1857, the county, on a removal of the seat of justice, was bound to return the donations. The case of *Warnecke* v. *Lembca*, 71 Ill. 94, settles who the legal representatives are.

Messrs. J. & J. DINSMOOR, for the appellees:

The bill alleges a reversionary interest in Ezekiel Kilgour in the lands donated. A reversion is an estate left in the grantor or donor to commence in possession after the determination of some particular estate granted out of him. (2 Blackstone's Com. 175; 1 Cruise's Digest, "Reversion," sec. 2; 2 Washburn on Real Prop. 390.) Kilgour never had any such estate to descend to his legal representatives.

If the title or fee of this block 57 was in the county, it seems hardly necessary to argue or cite authorities to show that an act of the legislature would have no effect upon the title. The legislature, by divesting the county of its property, would clearly be usurping the judicial functions of the government. *Lane et at.* v. *Dorman et ux.* 3 Scam. 242; *Rozier* v. *Fagan*, 46 Ill. 404.

The donor of an estate, and his heirs, stand in no better situation, so far as receiving the property given away, than

one who has made a fraudulent conveyance. *Choteau* v. *Jones,* 11 Ill. 300.

As showing the donor of land or property for the location of a county seat can not recover the same back on a change of the county seat, see *Adams et al.* v. *County of Logan,* 11 Ill. 336; *Harris* v. *Shaw,* 13 id. 456.

Mr. JUSTICE WALKER delivered the opinion of the Court:

In this case, appellants filed a bill in chancery, against the board of supervisors of Whiteside county, and others, to have certain real estate, standing in the name of Nelson Mason, transferred and conveyed to them. The date of the filing of the original bill, or the bill itself, nowhere appears from anything contained in the transcript of the record filed herein, nor does it appear from anything filed with the record. The amended bill, a copy of which is brought before us, appears to have been filed in the circuit court on the 6th day of January, 1881. To it a demurrer was filed, and on a hearing on the demurrer it was sustained to the amended bill, and it was dismissed. Complainants prayed and perfected an appeal to this court, and the record of the proceedings on the amended bill are brought to this court, and errors are assigned.

The bill alleges that a part of the complainants were the first settlers on and occupants of certain lands, describing them, and that they became entitled to preëmptions, and the exclusive right to enter them at the United States land office; that there then was a tract of land platted as a town site, owned and occupied by the State Bank, and other persons, naming them, known as Chatham; that contiguous to and on the east side of complainants' lands was another tract, which was platted and owned by Harris and Brink, two of the complainants, and three other persons, known as Harrisburg; that in the year 1839 the question arose as to the location of the county seat of Whiteside county; that to

induce its location at that place, the proprietors of these towns, and Kilgour, agreed with the county authorities, on condition the county seat should be located and kept there, and the court house should be built on the lands they lived upon, and to unite the two towns under the name of Sterling, to give the county the right and the money necessary to enter the land they thus occupied, and also to make other donations, being a sixty-acre tract of land, owned by the proprietors of Harrisburg, and $1000 in money, and on the part of Chatham, twenty acres of land adjoining the sixty-acre tract, and $1000 in money; that in 1842 these donations were accepted by the county authorities, and the preëmption held by Kilgour transferred to the county, and the money necessary for its entry was furnished by the proprietors and other persons, and the county entered the same in its own name, and located the county seat thereon, and with the donations thus given built a court house on block 57, on the plat of the land thus entered by the county, and the county seat remained at that place, and the building on block 57 was occupied and used as a court house, until in 1857, when the county seat was removed to another place; that since 1857 the county has not used or occupied the court house on block 57, but in January, 1866, the county conveyed that block to Nelson Mason; that on the removal of the county seat, by virtue of the agreement donating the land, and the act of the legislature, block 57 reverted to the donors in the proportion of their several donations, and the deed to Mason was made without authority of law; that a number of the donors had died before the suit was commenced, but their devisees, heirs or assigns are parties complainant. The bill states their interests, and the manner in which they were acquired. The several interest of each complainant is particularly set forth in the bill. The bill prays that complainants be decreed to be the owners of the block as tenants in common, according to their several interests therein, and that Mason be decreed

to convey the same to them, and on his failing to do so, a conveyance be made by a commissioner, and that then there be partition of their several interests, and if a partition can not be made, that the property be sold, and the proceeds be divided among them in proportion to their several interests in the same.

The act to which reference is made in the bill was approved on the 7th day of February, 1857. (Pub. Laws, 238, sec. 9.) It provides, that "in case the seat of justice of said county shall be removed from Sterling, and located as herein provided for, then the supervisors of said county are hereby authorized and required to convey, by good and sufficient conveyances, the court house and block of land upon which the same is situated and which is now used therewith, and all other lands or town lots heretofore donated to said county for the purpose of erecting said public buildings, and which are still owned and held by said county, to the parties who originally conveyed said property to said county, or to the legal representatives of said parties, in proportion to the donation made by them, respectively, for the purpose of procuring said lands and erecting said court house." This section gave to each donor to procure the land or to erect the building, as well as to those who donated land, an interest in the court house and the block of ground on which it stood, in proportion to the amount donated; and the section expressly provides, that in case of the death of any of the donors, their interest shall vest in their representatives. The act therefore, confers the right, and having done so, the question of reversion of the title does not arise. It is a legislative grant, and the donors or their representatives do not necessarily take a reversionary interest, but by grant from the General Assembly. If this grant became operative to pass title, then it is unnecessary to inquire whether, in the absence of the enactment, they would have held the title by reversion. It is true complainants allege they hold such an

interest, but the bill also claims they hold under this legislative grant.

By the allegations of the bill complainants show that they answer the description of the grantors in the act. It is alleged that they or their ancestors made donation to purchase the land and to erect the court house, and if this is true, and the demurrer admits its truth, they have brought themselves within the terms of the statute. It is said that Mason was a donor. If this be true, and he falls within the provisions of the statute, he can set up and rely upon his rights, and if he establishes them, he will be fully protected therein on a final hearing.

But it is contended that the General Assembly had no power to dispose of this property,—that it belonged to the county, and was therefore beyond the control of the legislature. The question of legislative power, and its extent, depends on the limitations contained in the constitution. When a State is created it is invested with complete sovereign power, unless restricted by constitutional limitation, and under our system of government such restrictions are written and embodied in organic law. Were it not for these limitations, the legislative power would be without restriction. When we have to determine whether an act is within the scope of legislative power, we do not look for an express delegation of the power in the fundamental law, but we look to see whether the general power has been limited. The first section of the fourth article of our constitution vests the legislative power of the State in the General Assembly. By it the full, unlimited and uncontrolled legislative power was conferred, and it may be so exercised unless limited by other provisions of that instrument, or its exercise is inhibited by the Federal constitution; and we may search in vain for any provision in either, prohibiting the General Assembly from selling or donating public property. There is no such inhibition.

Counties are mere political divisions of the territory of the State, as a convenient mode of exercising the political, executive and judicial powers of the State.    They were created to perform public, and not private, functions.    They are wholly public in their character, and are a portion of the State organization.    All their powers are conferred, and duties imposed, by the constitution and statutes of the State.    They are public, and all the property they hold is for public use. It belongs to the public, and the county is but the agent invested with the title, to be held for the public.    Were it not for constitutional restrictions, the General Assembly might change county seats at pleasure, or it might alter and change county lines, and even abolish counties and create new ones, to suit public convenience or interest.    The property held by the county was only acquired and held by authority conferred by the legislature, and for public use, and the property being held for the public is under the uncontrolled power of the General Assembly, as it is not inhibited in its absolute control.    The county could neither hold nor dispose of property unless authorized by the constitution or statute, and the legislature has the power to sell or dispose of it without the consent of the county authorities.    It then follows, that the act of the General Assembly conferred upon and vested the equitable title in the donors and their representatives, in the proportion each had originally contributed, and the county authorities were expressly required to so convey it to them.    According to the allegations of the bill they failed to do so, but conveyed it to Mason.

The demurrer having admitted the allegations of the bill, and they being sufficient to require the relief sought, the court below erred in sustaining the demurrer and dismissing the bill, and the decree must be reversed and the cause remanded.

*Decree reversed.*