## THE WEST CHICAGO PARK COMMISSIONERS

*v.*

### THE CITY OF CHICAGO.

*Filed at Ottawa October 29, 1894.*

1. MUNICIPAL CORPORATIONS—*two cannot exist in same territory at same time.* Two distinct municipal corporations cannot exercise the same powers, jurisdiction and privileges in the same territory at the same time.

2. SAME—*cannot levy assessments beyond their territory.* A municipal corporation cannot make a special assessment upon property lying within another municipal jurisdiction, and beyond its own.

3. SPECIAL ASSESSMENTS—*upon public grounds create no lien.* Special assessments upon public grounds, such as parks, for street improvements, are a mode of determining what part of the cost the public should pay, and create no lien upon the property.

4. PARK COMMISSIONERS—*of West Chicago—legal status.* The West Chicago Park Commissioners are, under the several park acts, a municipal corporation, which is not, within the purview of its powers, subordinate to the city of Chicago. Previous decisions referring to that board as a *quasi* municipal corporation explained.

5. SAME—*how far jurisdiction of park board exclusive.* In the laying out, improvement, management and control of parks, boulevards and streets committed to its charge by the several park acts, the West Chicago Park board's jurisdiction is paramount and exclusive.

6. Same—*park property may be assessed.* The parks under control of the West Chicago Park Commissioners are not exempt from assessment for local street improvements, but the jurisdiction to make such assessments is in said park commissioners, and not in the city of Chicago.

7. City of Chicago—*power to levy assessment on park property.* A special assessment levied by the city of Chicago upon lands embraced in Douglas Park, to pay the cost of certain boulevard lamps, is without authority, and void.

8. Same—*burden removed from park property should be borne by entire city.* The park district is an instrumentality for the improvement of the parks for the use of the entire city, and the burden which the public ought to pay for park improvements should fall on the entire city of Chicago, and not the park district.

Appeal from the County Court of Cook county; the Hon. Frank Scales, Judge, presiding.

Mr. John M. Hamilton, for the appellants:

The legislature may take away from the city of Chicago any of its delegated municipal power, and vest the same, for the whole city, or any part or district of territory thereof, in a new public municipal corporation created for that purpose. Dillon on Mun. Corp. secs. 21, 54, 60, 62.

The legislature may withdraw from municipalities the power to grant licenses for the sale of liquors within certain specified districts or localities in cities. *O'Leary* v. *Cook County,* 28 Ill. 534; *Dingman* v. *People,* 51 id. 280; *East St. Louis* v. *Wehrung,* 46 id. 392; *Straus* v. *Pontiac,* 40 id. 301.

It is competent for the legislature to substitute one municipality for another in the control of streets. It may abolish a city and appoint a successor, and may enlarge the powers of park commissioners and make them an ordinary municipality. *People ex rel.* v. *Walsh,* 96 Ill. 232.

The park commissioners are a public municipal corporation, in whom are vested certain governmental powers of a political character. *People ex rel.* v. *Walsh,* 96 Ill. 232; *People ex rel.* v. *Salomon,* 51 id. 37; *People ex rel.* v. *Williams,* id. 63; *South Park Comrs.* v. *Dunlevy,* 91 id. 49.

Power of taxation, or special assessment, for park uses and purposes, is vested alone in the park commissioners. *People ex rel.* v. *Mayor of Chicago,* 51 Ill. 31.

Park districts are recognized as having distinct legal boundaries, and the power of assessing and collecting taxes for park purposes is vested in the park commissioners of each district. *Park Comrs.* v. *Telegraph Co.* 103 Ill. 39.

The West Chicago Park Commissioners are a *quasi* municipal corporation for park purposes, and have power to take steps to have property specially assessed for park purposes. *Kedzie* v. *Park Comrs.* 114 Ill. 234.

The park commissioners are a municipal corporation, vested with power of government, and are agencies of the State for governmental purposes in respect of such parks within their respective districts. *West Chicago Park Comrs.* v. *McMullen,* 134 Ill. 177.

Mr. John S. Miller, Corporation Counsel, for the appellee :

Intention to make exemptions from taxation must be clear, and exemptions are strictly construed.    Cooley on Taxation, (2d ed.) 204, 205 ; Sedgwick on Stat. and Const. Law, 344, 632 ; *University* v. *People,* 80 Ill. 333 ; *People* v. *Graceland Cemetery,* 86 id. 336.

The constitution only permits exemptions from taxation, and does not permit exemptions from special assessment. *McLean* v. *Bloomington,* 106 Ill. 213 ; *Trustees* v. *Chicago,* 112 id. 403 ; *Higgins* v. *Chicago,* 18 id. 276 ; *Larned* v. *Chicago,* 34 id. 203.

The act of the legislature vesting the power to make local improvements by special assessment in cities, is as broad and unrestricted as the constitutional power.    It is as follows : "That the corporate authorities of cities and villages are hereby vested with power to make local improvements by special assessment, or by special taxation, or both, of contiguous property, or general taxa-

tion, or otherwise, as they shall by ordinance prescribe."
Rev. Stat. chap. 24, art. 9, sec. 1.

This language is substantially that of the constitu-
tion. (*Falch* v. *People*, 99 Ill. 137.) There is here no lim-
itation whatever. It is entirely for the city council to say,
by ordinance therefor, what local public improvements
shall be made by special assessment, and whether wholly
or partly by special assessment, and the courts cannot
interfere with that discretion. (*Fagan* v. *Chicago*, 84 Ill.
227; *People* v. *Sherman*, 83 id. 165.) And it is entirely within
the power of the council to determine, by ordinance, what
share of the cost shall be paid by the public. *Watson* v.
*Chicago*, 115 Ill. 79.

Mr. JUSTICE BAILEY delivered the opinion of the
court :

This is an appeal by the West Chicago Park Commis-
sioners from a judgment of the county court of Cook
county, confirming a special assessment upon the lands
embraced in Douglas Park, one of the parks under the
control of the appellants, to pay the cost of a street
improvement, the improvement consisting of the erection
of nineteen boulevard lamps on California avenue, be-
tween Twelfth street and Ogden avenue. The amount of
the assessment in question is $128.50, and it was stipu-
lated by the parties in the court below, that if the assess-
ment should be held to be valid in law, that should be
deemed the correct amount of benefits to be assessed
upon the park property for the improvement, but it was
further recited in the stipulation that the case was se-
lected out of a large number of similar cases pending, for
special assessments made by the city of Chicago upon
the West Chicago parks, involving in all considerable
amounts, for the purpose of getting a decision on the law
questions involved. In this court it is admitted that the
case is brought here as a test case, for the purpose of
settling the question of the power of the city of Chicago

to assess the lands embraced in the parks and boulevards under the control of the appellants, for the improvement of streets adjacent thereto or abutting thereon.

The appellants appeared before the county court and interposed a large number of objections to the confirmation of the assessment, all of which were overruled, and all the questions of law which we shall find it necessary to discuss were thereby properly raised.

The West Chicago Park Commissioners hold their office and exist as a municipal corporation under the provisions of an act of the General Assembly, entitled "An act to amend the charter of the city of Chicago, to create a board of park commissioners, and authorize a tax in the town of West Chicago, and for other purposes," approved and in force February 27, 1869, and of various other subsequent acts supplemental thereto or amendatory thereof. The act, after amending the charter of the city of Chicago, by providing for an enlargement of its boundaries by adding thereto a considerable amount of adjacent territory, including that which was afterward embraced in the West Chicago parks, provided, among other things, that seven persons, resident freeholders and qualified voters of the town of West Chicago, who should be designated by the Governor, should be, and they were thereby, constituted a board of public park commissioners for that town, to be known under the name of the "West Chicago Park Commissioners," their term of office to be seven years, and they were required to qualify by taking an official oath and by giving an official bond, and to organize as a board by electing one of their number president, and by appointing a secretary and treasurer, and by adopting a common seal, and it was provided that "the said board of commissioners shall be a body politic and corporate, with perpetual succession, and power to sue and to be sued, plead and be impleaded, to have and use a common seal, and they shall have and enjoy all the powers necessary for the purposes of this act."

Section 4 of the act was as follows : "The said board of commissioners shall have full and exclusive power to govern, manage and direct all parks, boulevards and ways authorized by this act, and by them purchased, made, laid out or established ; to lay out, regulate, make and improve the same ; to pass ordinances, and issue and enforce orders for the regulation and government of the same ; to levy special assessments on all property by them deemed benefited by the purchase, opening and improvement of such parks, boulevards and ways, as limited by this act ; to appoint such engineers, surveyors, clerks and other officers, including a police force, as may be necessary; to define and prescribe their respective duties and authority and fix the amount of their compensation, and, generally, in regard to such parks, boulevards and ways, they shall possess all the power and authority now by law conferred upon or possessed by the common council of the city of Chicago in respect to the public squares, places and streets of the city; and it shall be lawful for them to commence the improvement of the same as soon as the funds requisite therefor, or any portion thereof, shall have been obtained. The expenditure for engineers, clerks and officers, except the president, including the police force, shall not exceed $5000 per annum, without further authority from the General Assembly, but said board may accept of the services of such of the police force of the city of Chicago as may be placed at their disposal by the common council or police authorities of said city."

By section 5 it was provided as follows : "The said board shall have power, and it is made their duty, and they are hereby authorized, to select and take possession of, and to acquire by condemnation, contract, donation or otherwise, title forever, in trust for the inhabitants of the town of West Chicago and of the West Division of Chicago, and for such parties or persons as may succeed to the rights of said inhabitants, and for the public, as public promenade and pleasure grounds and ways, but not

without the consent of a majority, by frontage, of the owners of the property fronting the same, for any other use or purpose, and without the power to sell, alienate, mortgage or encumber the same," the lands required for a certain boulevard, and for three parks on the line of the same. "Said lands, boulevards and parks, and the personal property of said board, shall be exempt from taxation."

The act further conferred upon the park commissioners authority to establish building lines for all property fronting on their parks and boulevards; to control subdivisions of property within four hundred feet thereof; to condemn lands for parks and boulevards, and to levy and collect special assessments upon property deemed to be benefited by the establishment and improvement of the parks and boulevards, and, with the consent of the town of West Chicago, to levy and collect a tax upon the property of the town for park and boulevard purposes; to close up public streets passing through the park property, and to borrow money, not exceeding $50,000, to pay any deficiencies and necessary outlays arising or required in obtaining the necessary lands and in making the necessary improvements thereon, and to issue therefor the notes or obligations of the corporation; and it was provided, that for the payment of such notes and obligations the town of West Chicago, and the boulevard and park tax above mentioned, should be irrevocably pledged. Provision was also made for the submission of the act, before it should take effect, to a vote of the legal voters of the town of West Chicago, and also of the legal voters of the territory thereby annexed to the city of Chicago and to the town of West Chicago, the adoption of the act to be taken to be a consent on the part of the town to the imposition of the boulevard and park tax. 1 Private Laws of 1869, p. 342.

By a supplemental and amendatory act, approved April 19, 1869, it was provided, among other things, that

the title to property condemned, when paid for, should vest in the corporation, for the purposes specified in the act ; and power was given to the commissioners to borrow such sum of money, in addition to the $50,000 above mentioned, as should be necessary to pay such proportion of the cost of the property condemned as should be deemed a public benefit, and which ought therefore to be paid by the public, and to pledge the cash resources of the board and the credit of the town of West Chicago therefor. 1 Private Laws of 1869, p. 354.

By an act approved June 16, 1871, (Laws of 1871, p. 593,) and substantially re-enacted by an act approved May 2, 1873, (Laws of 1873, p. 129,) it is provided that any town within the limits of any city in which a board of park commissioners exists, having authority by law to acquire land, in trust for the inhabitants of the town, etc., as such public promenade, pleasure grounds or ways, but not for any other purpose, and without power to sell, alien, mortgage or incumber the same, shall have power to levy and collect a tax, not exceeding three mills on the dollar of the taxable property of the town, and not exceeding $100,000 annually, "to be used and expended by such park commissioners in governing, maintaining and improving such parks and boulevards or pleasure ways, and paying such necessary expenses incurred in and about the management of such parks and boulevards." And it is further provided that "such board of park commissioners shall annually, on or before the first day of August in each year, transmit to the corporate authorities of such town an estimate, in writing, of the rate or percentage of tax necessary to raise money sufficient to pay the cost of governing, maintaining and improving such parks and boulevards, and the other necessary and incidental expenses to be incurred in and about the management of such parks and boulevards, during the next succeeding year," and that if the corporate authorities decide to levy the tax, they shall certify the same to the county clerk,

etc., the tax, when collected, to be paid over to the board of park commissioners.

By an act approved May 31, 1879, (Laws of 1879, p. 213,) it is provided that the tax to be annually collected shall not exceed two and one-half mills on the dollar, and the same provision as to the purposes for which the tax shall be expended, expressed in the acts of 1871 and 1873, is repeated, and the park board is required and directed to appropriate *any* annual park tax, not exceeding one-half of a mill upon the taxable property of the town, whether known as "boulevard and park tax" or not, theretofore authorized and directed to be levied under authority of law and the vote of the people of the town, to the payment of the interest on the bonds given for park indebtedness, and also to pay and discharge the principal thereof, and such tax is pledged for the payment of such interest and principal.

By an act approved April 9, 1879, (Laws of 1879, p. 216,) every board of park commissioners is given power to connect any park, boulevard or drive-way under its control with any other park of the city or town, by selecting and taking any connecting street or streets, or parts thereof, leading to such park, provided the streets so selected and taken lie within the district or territory the property of which is taxable for the maintenance of the park, and provided further, that the consent of the corporate authorities having control of any such street or streets, so far as selected and taken, and also the consent, in writing, of the owners of a majority of the frontage of the lots abutting on such street or streets, so far as taken, shall first be obtained, and provided further, that such connection or improvement shall embrace only such street or streets as are necessary to form one continuous improvement. And the act further provided that: "Such park boards shall have the same power and control over the parts of streets taken under this act as are or may be by law vested in them of and concerning the parks, boulevards and drive-

ways under their control.   In case any such streets or parts thereof shall pass from the control of any such park board, the power and authority over the same granted or authorized by this act shall revert to the proper corporate authorities of such city, town or village, respectively, as aforesaid.    Any city, town or village in this State shall have full power and authority to invest any such park boards with the right to control, improve and maintain any of the streets of such city, town or village, for the purpose of carrying out the provisions of this act."

By an act approved April 11, 1885, (Laws of 1885, p. 224,) every board of park commissioners is authorized, in the same manner and upon the same conditions, to take under its charge and control any parks under the control of any city, town or village, and lying within the district or territory the property of which is taxable for the maintenance of the parks and boulevards already under its control, and the board is given the same power and authority over the parks so taken as it has by law over its other parks.

By a further act, approved June 27, 1885, (Laws of 1885, p. 225,) the act of April 9, 1879, is so amended as to authorize park commissioners to accept and add to their parks any street or streets which adjoin and run parallel with the boundary line of a park, and exercise the same jurisdiction over such street or streets so added to their park system as they now exercise over the parks themselves.

By an act approved June 14, 1887, (Laws of 1887, p. 243,) park commissioners having a bonded indebtedness are authorized and required to appropriate and levy an annual tax upon the taxable property of the town, sufficient to pay the interest on their bonds as the same matures from time to time, and also to pay and discharge the principal thereof at maturity.

In view of these various statutory provisions, it is perfectly plain that the West Chicago Park Commissioners

are a municipal corporation, created for the purpose of laying out, establishing, improving and maintaining certain parks, boulevards and ways within the territorial limits of the city of Chicago, and that it is given full and exclusive power and authority, not only to lay out and improve, but also to govern, regulate, manage, control and direct the same, and that its power and authority in all these respects are plenary, and exclusive of that of the city of Chicago.

Some question is made as to its rank and position as a corporation,—that is, whether it is to be regarded as a municipal corporation in the full and proper sense of the term, or merely what is called a *quasi* municipal corporation. While the settlement of this question is perhaps not of controlling importance, it may aid somewhat in the solution of some of the propositions presented for our consideration in this case, and we will therefore take the time to consider it briefly.

As we have already seen, by the act of February 27, 1869, under which the commissioners were originally organized, they were declared to be a body politic and corporate, and were afterwards spoken of in the act as a "corporation," and they were endowed with the usual attributes of a corporation, viz., that of perpetual succession, the power to sue and to be sued, to plead and be impleaded, to have a common seal, and they were vested, in general terms, with all the powers necessary for the purposes of the act. Among the powers specifically given were the power to make and enforce ordinances; to appoint and employ a police force; to levy taxes for municipal purposes; to acquire, by purchase, condemnation or otherwise, the lands necessary for the formation of parks, boulevards and ways; to improve, beautify and maintain the same, and hold the title thereto in perpetuity, for the benefit of the inhabitants of the town of West Chicago and of the public, as public promenade and pleasure grounds and ways, and to pay the cost and expenses

thereby incurred by special assessments upon the property deemed to be benefited thereby; and it was further expressly provided, that in regard to its parks, boulevards and ways the board should possess all the power and authority conferred by law upon or possessed by the common council of the city of Chicago in respect to the public squares, places and streets of the city, but without power to sell, alien, mortgage or incumber the same.

That, within the scope of the purposes for which it was created, the corporation possesses all the powers of a municipal body does not seem to admit of serious doubt. And not only is this so, but it was called into being and its organization was effected, not by mere act of the sovereign legislative will, but by the express assent of the people over which its jurisdiction extends. As we have already seen, by the terms of the act of incorporation the question whether the act should take effect, and the park board become thereby incorporated, was submitted to the vote of the legal voters of the territory to be embraced within the park district, and only upon an affirmative vote, expressing the voluntary consent of the people of the district, did the act become effectual or the incorporation take place. The Park act did not create the corporation of its own force, but it had the effect only of an enabling act, under which the inhabitants of the district could organize themselves into a municipal corporation if they should see fit. The corporation therefore exists, not as a mere result of an exercise of the sovereign legislative will, but by virtue of the voluntary action of the people composing it.

Municipal corporations, such as cities and villages incorporated under special charters or voluntarily organized under general incorporation laws, are called into existence either at the direct solicitation or by the free consent of the persons composing them, while *quasi* municipal corporations, sometimes called involuntary corporations, such as counties, etc., are only local organ-

izations, which, for the purposes of civil administration, are invested with a few of the characteristics of corporate existence. They are local subdivisions of the State, created by the sovereign legislative power, of its own sovereign will, and without any particular solicitation, consent or concurrent action of the people who inhabit them. *Hamilton County* v. *Mighels*, 7 Ohio St. 109 ; *Finch* v. *Board, etc.* 30 id. 37 ; *Askew* v. *Hale*, 54 Ala. 639 ; *Williamsport* v. *Commonwealth*, 84 Pa. St. 487 ; *Harris* v. *Board of Supervisors*, 105 Ill. 445 ; *Hollenbeck* v. *Winnebago County*, 95 id. 148 ; *Town of Waltham* v. *Kemper*, 55 id. 346 ; 1 Dillon on Mun. Corp. sec. 22, *et seq.*; 15 Am. & Eng. Ency. of Law, 954, and cases cited in notes.

Applying the foregoing test,—a test which seems to be abundantly sustained by all the authorities,—it follows, logically and necessarily, that the corporation in question falls within the class known as municipal corporations, properly so called, and not that of *quasi* or involuntary municipal corporations. But our attention is called to the fact that this court, in former decisions, in speaking of this identical corporation and other similar corporations, has called them *quasi* municipal corporations. This was the case in *People* v. *Salomon*, 51 Ill. 37, *Wilcox* v. *People*, 90 id. 186, *West Chicago Park Comrs.* v. *Western Union Tel. Co.* 103 id. 33, and *Kedzie* v. *West Park Comrs.* 114 id. 280. In other cases they are spoken of as municipal corporations, without any qualifying word. *People* v. *Walsh*, 96 Ill. 232 ; *South Park Comrs.* v. *Dunlevy*, 91 id. 49. On examining these cases, however, it will be found that in none of them was there any attempt to discriminate between municipal and *quasi* municipal corporations, nor any occasion for so doing. In *People* v. *Salomon*, in which the term *quasi* municipal corporations was first applied to these bodies, the question was as to the validity of the provisions of the Park act vesting the park board with power to levy and collect taxes within the park district, and for the purposes of that question all that was

necessary to determine was, that the park board was at least a corporate authority *quasi* municipal, and the subsequent cases in which the same term has been applied to these corporations have simply followed the *Salomon case,* and none of them have been of such character as to call for an accurate discrimination in the use of terms.

It in no way militates against the view that the park board is a municipal corporation properly so called, that the objects and powers of the corporation are limited to the matter of creating, improving, embellishing and maintaining, in perpetuity, a system of parks, boulevards and ways.  The powers of every municipal corporation are necessarily more or less limited, and the scope and extent of their corporate powers, and their limitations, are always matters of legislative discretion.  But the number and scope of the objects for which a public corporation is organized do not, and have never been held to, constitute the test by which to determine whether the organization is a municipal corporation properly so called, or only a *quasi* municipal corporation.  The park board, within the purview of its powers, is a corporation endowed with the same corporate functions, derived from the same source, and exercised in substantially the same way, as the city of Chicago.  It is in no sense a corporation organized to exercise a portion of the municipal powers and functions of the city, and in subordination to it, but, within its own sphere, it has the same rank, and the exercise of its corporate powers is as exclusive of any power on the part of the city to interfere, as if the two corporations occupied wholly separate areas of territory.

By the terms of the Park act, the park board is given "full and exclusive power" to govern, manage and control all parks, boulevards and ways authorized by the act.  By the several supplemental acts under which the board acquired authority to take possession of and control certain existing parks in the town of West Chicago, and the streets adjacent to its parks, and other streets to be selected for

the purpose of forming connections between its parks and other portions of the city, those parks and streets were transferred from the jurisdiction of the city of Chicago, and were placed under the exclusive power and control of the park board, the same as the parks and boulevards originally laid out and improved by it. It follows that the power of the park board over all these parks, boulevards and streets, for the purposes prescribed by these statutes, is plenary, while that of the city is wholly excluded. And this exclusion, so far as it relates to any power on the part of the city to govern, manage, control or interfere with these parks, boulevards and streets as such, is as complete as it would have been if the parks, boulevards and streets had been wholly withdrawn from the territorial limits of the city. Indeed, the legal effect of the various park acts would seem to be to take them out of the territorial jurisdiction of the city, so that, so far as the power of the city in relation to them is concerned, the corporate organization of the city is practically dissolved.

It is a well recognized principle of law, that there can not be at the same time, within the same territory, two distinct municipal corporations, exercising the same powers, jurisdiction and privileges. 1 Dillon on Mun. Corp. (4th ed.) sec. 184. In Wilcox on Municipal Corporations, 27, it is said: "A corporation may be created in any place where there is not an existing corporation for municipal government, even where there has formerly been one, if it be now dissolved. But there can not, at the same time, be two corporations in the same place, having the same or similar powers, privileges and jurisdiction." So in Grant on Corporations, 18, the rule is laid down as follows: "There appears to be no limit to the power of the crown to grant a charter of municipal incorporation, as regards the size or the character of the town to be incorporated. This rule must, however, be observed for the sake of order and peace, viz., that there cannot be

two corporations for the same purposes, with co-extensive powers of government, extending over the same district."

The same doctrine is laid down in *Taylor* v. *City of Fort Wayne*, 47 Ind. 274, and it is there said that "the proposition that two independent governments can not exercise the same powers within the same district at the same time is a self-evident one." To same effect see *Strosser* v. *City of Fort Wayne*, 100 Ind. 443 ; *State* v. *Town of Winter Park*, 25 Fla. 371 ; *City of Paterson* v. *Society, etc.* 24 N. J. L. 385 ; *King* v. *Pasmore*, 3 T. R. 199 ; 15 Am. & Eng. Ency. of Law, 1007.

We do not intend to intimate that, in the exercise of other municipal powers and functions, the city is excluded from jurisdiction over the park property, but only that, so far as relates to the laying out, improvement, management and control of the parks, the jurisdiction of the park board is exclusive. For all the purposes, then, of laying out, improving and maintaining parks, boulevards, streets and like public grounds, the city and the park commissioners occupy the legal position of two independent and co-equal municipalities, each vested with exclusive jurisdiction over the public grounds committed to its care, as trustee for the public. Neither can encroach upon the territorial jurisdiction of the other, but they stand, so far as these public grounds are concerned, in substantially the same legal relation to each other as though their territorial limits embraced adjoining but wholly separate areas. So far, then, as relates to all questions of street improvements, the West Chicago parks and boulevards are no more to be considered as a part of the city of Chicago than they would be if they were situate within the adjoining city of Evanston.

It will not be claimed, we suppose, that where two municipal corporations border upon each other, either can assess any portion of the cost of a local improvement upon lands situate within the boundaries of the other. For example, if before the annexation of the village of

Hyde Park or the town of Lake to the city of Chicago, the city had undertaken to assess any portion of the cost of a street improvement upon property in either of those municipal corporations, or if it should now attempt to make such assessment upon property in the city of Evanston, it would require no argument to show that such attempt would have been, or would be, futile and void. And this would not be upon the theory that the property sought to be assessed might not be benefited by the improvement, or that it was exempt from assessment for local improvements, but for want of jurisdiction in the city to make the assessment.

We are not unmindful of the fact that, by repeated decisions of this court, the rule has become well established that public grounds, such as parks, owned by a municipal corporation, are liable to assessment for their proper share of the burden of street improvements made by such corporation. Thus, in *Scammon* v. *City of Chicago,* 42 Ill. 192, the city caused an avenue adjacent to Dearborn Park, one of the parks then owned by it, to be improved, and it was held that, as the park, in common with other property in the vicinity, was benefited by the improvement, it was the duty of the city to cause it to be assessed for its just proportion of the expenditure thus incurred. Of course, it was not claimed or suggested that such assessment would create any specific lien upon the land embraced in the park, or that such land could in any event be sold therefor, the assessment being held to be only the mode of determining the proportion of the cost of the improvement which the public,—that is, the city, as the beneficial owner of the park,—should pay. The duty of thus assessing against the city the sum which was to be deemed the public benefit resulting from the enhanced value of the park, was placed upon the same ground upon which the expense of improving the street intersections was properly chargeable against the city as the owner of the abutting and intersecting streets. Also,

in *County of McLean* v. *City of Bloomington*, 106 Ill. 209, it was held that the public square in Bloomington, belonging to the county of McLean, and on which the county court house was situated, was liable to assessment for a street improvement, such assessment being treated as the mode of ascertaining the portion of the cost of the public benefit resulting from the improvement which the county, as the owner of the public square, ought to pay.   But in neither of these cases, nor in any other of similar import to which our attention is called, was there any question as to the territorial jurisdiction of the city in the matter of street improvements over the property assessed.   The public grounds there in question were parts of the city for all municipal purposes, and they were accordingly held to be subject to assessment by it for local street improvements.

The view we are disposed to take in the present case is, not that the parks under the control of the West Chicago Park Commissioners are exempt from assessment, by the proper municipal authority, for local street improvements, any more than are other public grounds, but only that, by the park acts, jurisdiction to make such assessments is withdrawn from the city of Chicago, the parks being, by force of those acts, for all street purposes, taken out of the territorial limits of the city and placed within the exclusive jurisdiction of the park board. Our conclusions, therefore, in no way conflict with the two cases last cited, and the other cases holding the same doctrine, but rest wholly upon principles not involved in those cases.

It follows, necessarily, that the assessment in question was made without authority, and that it is consequently void.   The practical result of this conclusion will be, that the portion of the cost of street improvements in streets adjacent to or abutting upon the parks under the control of the park board which the public ought to pay, will have to be paid by the city of Chicago instead of the

town of West Chicago. If assessments like the one in question are upheld, the only fund out of which they can be paid must be raised by taxation upon the property within the park district, which embraces the town of West Chicago, while if such assessments are set aside, the city will probably be compelled to pay that portion of the cost of the improvements. And this result, in our view, is neither inequitable nor out of harmony with the spirit and intention of the park acts. While it is true that those acts created the park district and authorized the imposition of taxes upon the property of the district for the purpose of improving and maintaining the parks, yet we think it doubtful, to say the least, whether the exclusive beneficial ownership of the parks was intended to be so far vested in the people of the district as to constitute them, and them alone, the "public" upon which should rest the burden of paying for the benefits to the park property resulting from street improvements in its vicinity. The better view would seem to be, that the park district was created as a convenient instrumentality for the improvement and maintenance of the parks for the use of the entire city, and that the body upon which should fall the burden which the public ought to pay is the entire city, and not the park district.

The parks and boulevards constructed by the park board are held for the use of the public generally, as well as for the public in their immediate vicinity. Various streets and parks formerly under the control of the city have, by virtue of the park acts, been transferred to the park board, to be held by it in the same manner, and while, as to such streets and parks, there has been a change in the municipal authority having control, there has been no change in the public entitled to their use, and in case they should ever pass from the control of the park board, the statute provides that they immediately revert to the city. It would thus seem that while the park board is the instrumentality created by law for con-

trolling and maintaining the parks, the public for which they are held is the entire city, as well as the town of West Chicago, and the city, we think, is the body upon which should fall these assessments which the "public" ought to pay.

There is another consideration which, in our opinion, greatly strengthens the view that assessments for these street inprovements should not be made against the park board, and that is, that no power seems to have been given to the board to raise the money necessary to pay them. Perhaps if no more was involved than the inconsiderable sum at issue in this suit, this consideration would be of comparatively little weight. But this appeal is brought merely to test the question of the power of the city to make assessments of this character, it being admitted that a large number of similar assessments were pending at the time the appeal was taken, involving, in the aggregate, a considerable sum of money, and it is claimed by the counsel for the park commissioners, and not denied or questioned by counsel for the city, that the aggregate of these assessments, at that time, was as large as, or larger than, the amount the commissioners are empowered by law to raise by taxation in any one year, and that it is probable that, for an indefinite period in the future, these assessments, if sustained, will nearly, if not quite, absorb the entire revenues of the park board. While the record before us furnishes no evidence on this subject beyond what may be gathered from the assertions and admissions of counsel, our general knowledge of the cost of street improvements in portions of the city which are being rapidly developed, as is likely to be the case in the vicinity of the parks in question, gives much reason to believe that the estimates of counsel are not greatly overdrawn.

The only sources of revenue provided by the park acts are (1) special assessments upon the property deemed to be benefited by the establishment and improvement of

the parks, and (2) a general tax upon all the taxable property in the park district. The first of these sources of revenue can not legally exceed the actual cost of the improvement for which the assessments are levied, and no surplus can properly arise therefrom applicable to the payment of city assessments. The amount of the tax which the park commissioners may annually levy is limited to a certain number of mills per dollar, and it is specially provided that no more than $100,000 shall be levied each year, and that the money thus raised shall be used and expended by the park commissioners in governing, maintaining and improving the parks, boulevards and pleasure ways, and paying other necessary and incidental expenses incurred in and about the management of the parks and boulevards. In view of these provisions it can not be supposed that the legislature, in creating the park board as an independent municipal corporation, contemplated the imposition upon its property by another corporation, of special assessments sufficient to greatly impair, if not wholly exhaust, the revenues provided for the accomplishment of the purposes for which it was incorporated. These considerations, though perhaps not controlling in themselves, tend strongly to reinforce the view already expressed, that upon a proper construction of the park acts it must be held that the relation between these two municipal corporations, and their relative powers and jurisdictions, are such as to exclude the authority of the city to levy special assessments upon the property of the park board.

After careful consideration of the questions involved in the case, we are of the opinion that the assessment under consideration was imposed without legal authority, and is void, and that the judgment of the county court confirming it is erroneous. The judgment will accordingly be reversed.

*Judgment reversed.*