Marie Helen Muesig, Appellee, v. George Harz et al., Defendants. The Sanitary District of Chicago and Tessville, an Incorporated Village, Appellants.

Gen. No. 37,988.

116

Opinion filed December 30, 1935.

ELMER J. WHITTY, EDWARD A. McCARTHY and THOMAS F. DONOVAN, all of Chicago, for appellant Sanitary Dist. of Chicago.

WELLS & LIDDELL, of Chicago, for appellant Village of Tessville.

John A. Bloomingston, of Chicago, for appellee; Ben W. Goldman, of Chicago, of counsel.

Mr. Presiding Justice Scanlan delivered the opinion of the court.

Plaintiff sued George Harz and Ernest A. Warfield; Tessville, an incorporated village, and the Sanitary District of Chicago, a corporation (hereinafter called Sanitary District), in case. The death of defendant Warfield was suggested and the cause proceeded to trial against the other three defendants. A jury returned a verdict finding the three defendants guilty and assessing plaintiff's damages in the sum of $3,000. The motion of defendant Harz for judgment in his favor notwithstanding the verdict was allowed. The motions of Village of Tessville and Sanitary District for a new trial were overruled and they have appealed from a judgment entered upon the verdict.

On May 18, 1930, at about 11 p. m., plaintiff was riding southward on McCormick road near Devon avenue, in Tessville, Cook county, Illinois, in an automobile driven by her husband. "It was a bad . . . rainy night, very hard to see"; "just before the accident there was a blinding rain storm." The right front of the automobile came in contact with a "timber" lying on the road, the "steering mechanism" of the automobile was thereby "broken," and the car, out of control, angled to the west curb, jumped it, hit an electric light pole, and turned on its side. Immediate investigation showed marks on the roadway from the timber to the overturned automobile. "This timber was made of two pieces nailed together. A small plank or ridge was nailed to an ordinary size plank and was the same length as the larger plank. It was about one-half the width of the big plank and about two inches in height." There was evidence that this timber had been seen lying in the road along the west curb that afternoon and that it had been in the street in that

position on many other occasions prior to the accident; that defendants Harz and Warfield operated a "practice golf course" immediately west of the curb at the point of the accident and used the timber to enable their patrons to drive over the high curb of McCormick road to the golf course; that defendant Sanitary District, with knowledge of the presence in the street of the timber, had permitted it to remain alongside of the curb in the street without even requiring defendants Harz and Warfield to anchor it to the curb so as to prevent it from being moved by automobiles or other causes into the drive. McCormick road was constructed and maintained by the Sanitary District on its own property along the North Shore Channel of the Sanitary District of Chicago and was policed by its officers. The highway was traveled by thousands of motorists daily. The police of the Sanitary District had seen this board along the curb in the highway and had received instructions not to allow it to be placed there, but, nevertheless, they permitted it to remain in the road and to be used by patrons of defendants Harz and Warfield. McCormick road at the point in question was within the limits of the Village of Tessville, and its police officers also patrolled it. These officers had been instructed to see that the timber was taken up before dark, but to permit it to remain there during the daytime. As a result of the accident plaintiff sustained serious injuries.

Defendant Village of Tessville filed a plea of the general issue and later filed a special plea of non ownership, operation and control. After a general demurrer to the declaration filed by defendant Sanitary District was overruled it filed a plea of the general issue. Neither of the two defendants filed a special demurrer.

The two defendants now remaining in the case contend that the declaration "does not state a cause of action" and that such "failure to state a cause of

action is properly considered under a motion in arrest of judgment." In *Plew v. Board,* 274 Ill. 232, 234, the court states:

"After judgment, the rule by which pleadings before judgment are construed most strongly against the pleader is reversed and the pleading upon which the judgment is based is liberally construed for the purpose of sustaining the judgment. (*Chicago and Alton Railroad Co. v. Clausen,* 173 Ill. 100; *Klawiter v. Jones,* 219 id. 626; *Sargent Co. v. Baublis,* 215 id. 428; *Diamond Glue Co. v. Wietzychowski,* 227 id. 338.) If the statement of claim filed in this cause stated a cause of action, however defectively or imperfectly, and the issue joined was such as necessarily to require proof of the facts defectively stated, it would be sufficient."

Plaintiff concedes that the declaration is not a perfect one, but she contends that it alleges, somewhat imperfectly, sufficient ultimate and evidentiary facts to state a good cause of action; that had defendants seen fit to file a special demurrer imperfections could have been cured, and that this court must now construe the pleading liberally for the purpose of sustaining the judgment. Plaintiff's contention is a sound one, and in this connection it must be borne in mind that the new Practice Act (sec. 33, par. 161, ch. 110, Ill. State Bar Stats. 1935) provides:

"(3) Pleadings shall be liberally construed with a view to doing substantial justice between the parties." As we read the record plaintiff has certainly a good cause of action against the Sanitary District, and its able counsel have been practically forced to rely upon technical points in support of their general contention that the judgment should be reversed. As to the instant contention defendants argue that "at no place in the declaration can there be found a statement or even an indication that McCormick Road was a public

highway or that it had been traveled by the public or was being traveled by the public or that the public had been invited to use said highway, or had been using it such a length of time that it was presumed to be a public highway. For aught that appears in the declaration, McCormick Road may have been owned, operated and controlled for municipal purposes only. In other words, the public may have been excluded and the plaintiff may have been a trespasser, or she may have been a licensee, or McCormick Road may have been a private road constructed, maintained and controlled for private purposes of The Sanitary District of Chicago or for private purposes of the Village of Tessville, or both, which purposes may have been contrary to the general public use.'' The declaration alleges that plaintiff was riding in an automobile ''south bound on a certain then road known as to-wit, McCormick Road in Cook County, Illinois at or near to-wit, between Devon Avenue and Tuohy Road and in to-wit, at or near Tessville in said Cook County, Illinois''; that ''the said road aforesaid, . . . McCormick Road was a road in the said Village of Tessville, Illinois; . . . that the said defendants, and each of them, and all of them, knew or in the exercise of ordinary care should have known that the said log or timber was in the *said street*.'' The declaration also alleges ''that while the plaintiff was so riding, to-wit, south on McCormick Road at the point aforesaid between Devon Avenue and Tuohy Road aforesaid . . . there was a certain then large log of wood in the *said street*.'' From the allegations of the declaration it appears that the ''said road,'' or ''said street'' was curbed. In *Carlin v. City of Chicago,* 262 Ill. 564, 566, it is said: ''Webster defines a street to be 'a city road.' The word 'street' is a generic term, and includes all urban ways which can be, and are generally, used for ordinary purposes of travel. It is a highway free to all,

and maintained not for private gain but public benefit. (Elliott on Roads and Streets, 12; see 7 Words and Phrases, title 'Street.')''

Counsel for defendants, in the closing argument, called McCormick road ''this highway,'' and directed attention to the fact that the evidence showed ''that it is a very fine highway, forty feet . . . on either side is a curb, . . . and they maintained a very fine lighting system there. . . . The volume of light produced by one of these lights was equivalent to ten times the amount of light produced by the moon on an unclouded night.'' At another point in the argument counsel stated, ''He (plaintiff's husband) was driving down *the street* there.'' Counsel also calls attention to the fact that a policeman of the Village of Tessville testified ''that he patrolled *that street* at various intervals, and that he saw no obstruction in *the street.*'' In concluding his argument the counsel stated: ''The Sanitary District, as I have said at the outset, owns that, or rather maintains that road to a certain extent. It provided a fine road *for the people's use.* It is doing its best to serve the people. It is well lighted and it is well policed.'' William Stolberg, a police officer of the village, testified that he ''patrolled *this street,*'' and that it was also patrolled by the Sanitary District police; that McCormick boulevard from curb to curb was about forty feet wide; that it had ''a four-lane highway''; that ''McCormick Boulevard is a very popular thoroughfare. There is a lot of traffic on it.'' We might well take judicial notice of the fact that McCormick boulevard is a public thoroughfare. Here we have a case where the evidence and the admissions of counsel for defendants strengthen the allegations of the declaration. (See *Plew v. Board, supra.*) If the instant contention had been raised before the trial court by special demurrer, that court, in passing upon it, would have been governed by Rule 11 of the Rules

of Practice and Procedure of the Supreme Court, which provides, *inter alia,* that if facts are adequately stated in one part of a pleading they need not be repeated elsewhere in such pleading. Defendants argue that the declaration does not allege ''that the log in itself was dangerous nor that it was in a dangerous position at the time of the accident, nor that the defendants knew it was dangerous or placed in a dangerous position where it is alleged to have been. The declaration merely says that the defendants knew it was there but that does not imply that defendants knew it was dangerous or knew that it was in a dangerous position or knew that it should have been removed.'' Allegations of facts from which the law will raise a duty, rather than mere allegations that it was the duty of a defendant to do certain things, have always been preferred. The declaration alleges that defendants, ''and each of them, and all of them, knew or in the exercise of ordinary care should have known that the said log or timber was in the said street, it having been there for such a length of time that each and all of the said defendants knew about the same, and each and all of the said defendants knew that the said timber was loose and not fastened or attached to the curbstone and could be easily moved''; that defendants knew that the said timber was moved from its accustomed place and was extending across the road; that the log had extended across the road such a length of time that defendants and each of them ''in the exercise of ordinary care should have known thereof.'' The declaration alleges that McCormick road ''was owned, maintained and operated by The Sanitary District of Chicago, a corp.,'' and also by the other defendant, and it is idle to argue that defendants, under all the allegations of the declaration, owed no duty to keep the timber off the highway, as it is plain from the facts alleged that the timber on the highway would constitute a posi-

tive menace to traffic on a dark and stormy night. The law raises the duty from the facts alleged. The record shows that defendants, during the trial, understood clearly the theory upon which plaintiff predicated a recovery.

Defendants contend that "where the negligence charged is a defect or obstruction in a public highway the evidence must show whether or not the municipality had actual notice of the same or that the defect existed for so long a time that in the exercise of ordinary care the defendants should have known it." Defendants argue that "the only evidence introduced tended to show that a log or piece of wood was customarily used along the curb of McCormick Road in the vicinity where the accident occurred, but there is no evidence to show how or when or in what manner such piece of wood was removed, as alleged, from its customary place along the curb to a right angular position extending across the said road." The evidence is undisputed that both defendants knew that a loose, unattached, easily movable "timber" was customarily placed in the road along the curb at the point in question. Policeman Stolberg testified that he received instructions that if there were any planks lying on the boulevard he was to take them off, but that "if a plank were lying on the boulevard near the curb used for a driveway we would allow it to remain"; that he noticed the timber or plank on the curb on McCormick road at Arthur avenue during the daytime "up until before darkness"; that it was about eight by twelve inches and was made in an angle so as to fit closely to the curb; that it was about ten or twelve feet in length; that Harz and Warfield operated the Stop and Sock course at Arthur and McCormick road at the time in question; that he had been instructed to see that the plank against the curb on McCormick boulevard "in front of Arthur Avenue" was up before darkness,

but that they were permitted to allow it to remain there during the daytime. Fred Sandstrom, a motorcycle policeman for the Sanitary District patrolling McCormick road, testified that his duties were to remove from the road anything that could cause damage, or have it removed; that the Harz and Warfield golf course, "a practice course," was at Arthur avenue and McCormick road; that there was no break in the eight to twelve-inch high curbstone on the west side of McCormick boulevard between Devon and Tuohy; that there was a ramp, or "inclined planks or timbers" placed along the curb where Arthur avenue, if extended, would intersect McCormick road; that defendants Harz and Warfield placed a solid log along the curb occasionally; that it was probably about eight or ten feet long, "long enough for an automobile to drive over it"; that the Sanitary District instructed him not to allow it to be "placed down there." "When I saw them it was during the day and they didn't always have to have them up during the day, for the simple reason that anybody going on the boulevard could see them during the day, but they were compelled to take them up at dusk"; that he permitted the log to remain in the road during the daytime in spite of his orders; that he used his own judgment in the matter. Raymond Schofield, a motorcycle policeman for the Sanitary District on May 18, 1930, testified that while he had instructions not to allow any planks or timbers to remain on the road, that he had seen the timber "laying on McCormick Boulevard up against the curb" in the daytime, and it was not fastened. The instructions given by defendants to their police officers show that they realized that the presence of the timber in the highway near the curb, unattached to the curb, was a menace to the public driving vehicles along the highway. The injury to plaintiff was the natural consequence of defendants' police officers' using their own

judgment in the matter. Vehicles had the right to use the highway from curb to curb, and even if the plank customarily lay near the curb, it nevertheless, in that position, constituted a dangerous obstruction. Heavy rains might cause it to float away from the curb, or a vehicle might strike it a glancing blow as it lay near the curb and cause it to be moved farther out into the road and into the path of passing cars. The jury were justified in finding that the accident was caused by the automobile striking a timber upon McCormick road at a point where Arthur avenue, if extended, would intersect that road, and they were further justified in finding that the timber was the one that was used by defendants Harz and Warfield for the purpose of enabling automobiles to cross over the curb and into their golf practice course. It is true, as defendants argue, that there is no direct evidence to show how or just when the timber was moved from the curb to the point on the roadway where the automobile hit it, but the jury were justified in finding, from all the facts and circumstances, that, shortly before the accident, a downpour of rain or the passing traffic on the road, or both, caused it to be moved from the curb to the point where the automobile hit it.

Defendants contend that ''McCormick Road was constructed by The Sanitary District of Chicago on its own property and is being maintained by it along the North Shore Channel of The Sanitary District of Chicago under legislative authority granted it by an act of the legislature provided for under section 347, chapter 42, Cahill's Revised Statutes of the Drainage Act. . . . Under authority of this legislative enactment the Village of Tessville has been divested of its power and authority to control, maintain or operate McCormick Road, and therefore could not by any stretch of the imagination be under a duty to the plaintiff to maintain said road or to keep said road free from obstructions

or to protect her in any manner whatsoever while she may be on said road''; that it is a joint judgment against the two defendants and as the judgment against the village must be reversed the judgment must be reversed *in toto*. Plaintiff answers that it is now the law that a tort judgment rendered against two defendants can be reversed as to one and affirmed as to the other. Judgment was entered in August, 1934, and the new Civil Practice Act governs the situation. Section 92 of that act, which came into force on January 1, 1934, obviates the necessity of reversing as to all defendants. (See *Fogel v. 1324 N. Clark St. Bldg. Corp.*, 278 Ill. App. 286; also *Adkins v. Strathmore Co.*, 278 Ill. App. 183.) While the instant suit was commenced in 1930, Rule 1 of the Rules of Practice and Procedure adopted by the Supreme Court provides:

"All provisions of the Civil Practice Act with respect to review in civil proceedings by the Supreme or Appellate Courts shall apply to orders, determinations, decisions, judgments or decrees entered by trial courts on or after January 1, 1934. . . . "

In their reply brief counsel for defendants, confronted with plaintiff's answer to their contention, abandon it and argue, as we understand it, that there is a joint judgment and that it is essential, to sustain it as to both or either of the defendants, that there be apt allegations of joint liability in the declaration, that there are no such allegations, and therefore the judgment must be reversed. This contention, not raised in the brief, is an afterthought, and we would be justified under our rules (Rule 7, Rules of Practice, Appellate Court, First District of Illinois) in disregarding it entirely. However, we find no merit in it. The declaration alleges that McCormick road was owned, maintained and operated by the Sanitary District, and further alleges that McCormick road was a road in the Village of Tessville and was also owned,

operated and controlled by that village. The rule in assumpsit which requires that where joint promises are charged such promises by all must be proved, has no application to actions of tort, but the rule is that all persons who join in the commission of a wrong are jointly and severally liable and the injured party may sue all or any of them. Nor is it necessary in actions *ex delicto* to prove all of the allegations of the declaration. (See *Kovell v. North Roseland Motor Sales,* 275 Ill. App. 566, and cases cited therein.) Under the allegations of the declaration plaintiff had the right to prove a case against both defendants or one of them, and the judgment entered is the ordinary one entered in an action in case where more than one defendant is found guilty.

Should the judgment, in so far as it applies to the Village of Tessville, be affirmed or reversed? By its plea of the general issue the Sanitary District admitted ownership, maintenance and control of McCormick road. (See *Mueller v. Hayes,* 321 Ill. 275, 278.) In the trial of the cause, and here, both defendants contended that the Sanitary District, alone, owned, maintained and controlled McCormick road. Defendant Village of Tessville filed a special plea denying that it owned, operated or controlled McCormick road. Plaintiff contends that "the defendant, Village of Tessville, did have the right of supervision over the highway as a village street"; that the statute does not give exclusive control over the road to the Sanitary District; that for the purposes peculiar to each both exercised concurrent jurisdiction over it and it was the common law duty of the Village to keep the road (street) free from obstructions. Defendants call attention to the well recognized principle of law that there cannot be at the same time and within the same territory two distinct corporations exercising the same powers, jurisdiction and privileges. (See *West Chicago Park Com'rs v,*

*Chicago,* 152 Ill. 392, 406; *Zeigler v. Douglas,* 283 Ill. 407, 413.) Both defendants contend that McCormick road was constructed and maintained by the Sanitary District on its own property along the North Shore Channel of The Sanitary District of Chicago under the following act of the legislature:

"Par. 347. *Power to build, maintain and repair highways.)* Sec. 10a. Any district organized under this Act shall have power to build and maintain highways along or near any canal or channel built by the district, upon land owned by said district, and to repair and maintain public highways near or along any such canal or channel, whenever such highways so constructed, or so repaired or maintained, are necessary, in the discretion of the board of trustees, to make accessible and available for convenient use dock property owned by the district." (Cahill's Ill. Rev. St. ch. 42.)

They direct our attention to the fact that not only was there no intersecting street at the point of the alleged accident, but that none of the streets of the Village of Tessville intersects McCormick road, and that there is no break in the unusually high curbstone of McCormick road between Devon avenue and Tuohy road. Upon both sides of the road "from Devon to the end of the drive" signs were placed "bearing the caption or name 'The Sanitary District of Chicago.'" Village of Tessville "is not very well built up." It contains about 475 people. Its officials never authorized the expenditure of any money for the maintenance of McCormick road and never authorized the policing of the road by its officers. Sanitary District strenuously contends that the village had nothing to do with the construction or maintenance of the road. The authority of the Sanitary District to construct and maintain McCormick road is not questioned in this proceeding. Plaintiff relies upon *South Park Com'rs v. Chi-*

cago City Ry. Co., 286 Ill. 504, 508, and Chicago City
Ry. Co. v. Park Com'rs, 257 Ill. 602, 613, in support of
her position, but these two cases hold that the City of
Chicago and Park Commissioners had an equal right,
but for distinct and different purposes, within the areas
covered by the intersections. If the accident to plain-
tiff had happened at a place where a street of the Vil-
lage of Tessville intersected McCormick road the cases
cited by plaintiff might then apply. After giving care-
ful consideration to the instant question we have
reached the conclusion that the judgment, in so far as
it applies to the Village of Tessville, should be re-
versed.

The judgment of the circuit court of Cook county, in
so far as it applies to the Sanitary District of Chicago,
a corporation, is affirmed; in so far as it applies to the
Village of Tessville, an incorporated village of Illinois,
it is reversed.

Judgment affirmed as to the Sanitary District of
Chicago, a corporation; reversed as to Village of Tess-
ville, an incorporated village of Illinois.

SULLIVAN and FRIEND, JJ., concur.