THE PEOPLE ex rel. J. F. Kastning, Plaintiff in Error, vs. THEODORE MILITZER et al. Defendants in Error.

*Opinion filed February 16, 1916—Rehearing denied April 7, 1916.*

1. APPEALS AND ERRORS—*agreed statement of facts will be presumed to contain all the facts.* Where the attorneys for the parties have stipulated what the facts are and attested the correctness of the agreed statement, which is incorporated in the record in the bill of exceptions, it will be presumed by the Supreme Court that the agreed statement contains all the facts, and no statement that the bill of exceptions contains all the evidence is necessary.

2. ELECTIONS—*the Woman's Suffrage act of 1913 did not authorize women to vote at election to organize high school district.* The Woman's Suffrage act of 1913 did not authorize women to vote at an election upon the proposition to organize a high school district. (*People* v. *Peltier,* 265 Ill. 630, followed.)

3. SAME—*the act of 1915, to legalize elections to organize high school districts carried by women's votes, valid.* The act of 1915, (Laws of 1915, p. 630,) to legalize elections to organize township high school districts held under the Township High School act of 1911 where the votes of women may have been the deciding factor in carrying such elections, is valid, as the General Assembly had the power, when the Township High School act was passed, to have authorized women to vote at such elections. (*Scown* v. *Czarnecki,* 264 Ill. 305, applied.)

4. SAME—*what is necessary in order that curative act of 1915 may be applied.* In order that the curative act of 1915 may be applied to legalize an election to organize a township high school district it should appear from the record that the case is not within the proviso of the act, which states that it shall not apply to any district portions of which have, since the organization of the district, been organized into or as a part of any other district.

5. SCHOOLS—*what does not prevent possibility of a portion of territory of one district being embraced in another.* The fact that a petition to organize certain territory into a high school district has been filed and an election held and carried in favor of such organization, the legality of which organization is subsequently attacked by an information in the nature of *quo warranto,* does not prevent the possibility of a portion or portions of such district being organized into another district or districts between the date of the election and the judgment in the *quo warranto* proceeding.

6. MUNICIPAL CORPORATIONS—*limit of rule that two like municipal corporations cannot exist in the same territory.* The rule that there cannot be, at the same time and in the same territory, two distinct municipal corporations exercising the same powers, jurisdiction and privileges, applies only to municipal corporations which have been legally organized, and it does not follow from such rule that a *de jure* municipal corporation may not be organized in territory where a *de facto* municipal corporation of the same kind is established and exercising jurisdiction.

7. STATUTES—*power of the General Assembly to enact curative laws.* Where there is no constitutional prohibition the General Assembly may validate by a curative act any proceedings which it might have authorized in advance.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. CLARENCE N. GOODWIN, Judge, presiding.

RALPH L. PECK, and RATHJE, LAWLOR & CONNOR, for plaintiff in error.

WALLACE E. SHIRRA, and HOLT, CUTTING & SIDLEY, (CHARLES S. CUTTING, and J. D. DICKERSON, of counsel,) for defendants in error.

Mr. JUSTICE COOKE delivered the opinion of the court:

The People, on the relation of J. F. Kastning, plaintiff in error, were granted leave, on October 30, 1914, to file an information in the nature of *quo warranto* in the superior court of Cook county demanding that defendants in error show by what warrant or authority they held and exercised the offices of president and members of the board of education of a certain township high school district in Cook county. Defendants in error filed their plea of justification to the information, and upon hearing, the court, on January 22, 1915, found the issues for respondents, defendants in error. This writ of error has been sued out to review that judgment.

The plea of defendants in error discloses, and the proof shows, that more than fifty of the legal voters of certain territory in Cook county signed a petition to organize such territory into a high school district under the provisions of an act entitled "An act to authorize the organization of high school districts," approved June 5, 1911, in force July 1, 1911, (Hurd's Stat. 1913, p. 2195,) and filed said petition in the office of the county superintendent of schools of Cook county, who, having received the same, ordered an election to be held for the purpose of voting for or against the proposition to establish a township high school in the proposed district. Notices of such election were posted as required by statute and an election was held on March 28, 1914. The election officials certified that the total number of votes cast at the election was 1277, of which 718 were cast by men and 559 were cast by women; that of the votes cast by men 335 were for and 382 were against the establishment of a township high school, and one ballot was defective; that of the votes cast by women 303 were for and 240 were against the establishment of a township high school, and 16 votes were defective.

Plaintiff in error urges that the judgment of the superior court should be reversed for the reason that the certificate of the judges of election shows that the proposition did not carry by a majority of the votes cast at the election, and that if it be held that a majority of the votes were cast for the establishment of the school, the judgment should be reversed for the reason that the majority is given by the votes of women, whereas the votes cast by men show a majority against the establishment of the school.

Defendants in error insist that the judgment of the superior court must be affirmed for the reason that the bill of exceptions does not purport to contain all the evidence. The attorneys for the parties on February 6, 1915, entered into a stipulation whereby it was agreed that in lieu of the

stenographic report of the evidence taken on the trial a statement of facts theretofore drawn up by the attorneys, and bearing, respectively, their attestation of the correctness thereof, might be incorporated into what was designated in the stipulation as the certificate of evidence to be used in the record on appeal, and that the presiding judge of the superior court should sign and seal the same as such certificate of evidence. This agreed statement of facts is contained in the bill of exceptions and the attorneys for each of the parties have attested the correctness thereof. It is true there is no express statement in the bill of exceptions that it contains all the evidence or all the facts proven, but under this situation that is not necessary. The agreed statement of facts in the record takes the place of a bill of exceptions, and when the parties have stipulated what the facts are and the record comes up on the agreed statement of facts we must presume the statement contains all the facts. (*Hall* v. *City of Virginia,* 91 Ill. 535.) When the facts are thus stipulated no presumption will be indulged that sufficient proof was made to sustain the judgment of the trial court.

It is also suggested that the question of the legality of women's votes was not raised in the trial court and therefore cannot be urged here. It is true that the petition for leave to file the information did not set that up as one of the grounds for granting the leave, but it relied wholly upon the proposition that a majority of the votes cast were not in favor of the organization of the district. The court granted leave to file the information, however, and upon the hearing it was disclosed that a large majority of the votes cast by women were in favor of the proposition, and that even should it be held that the defective ballots should not be considered in determining the number of votes cast, the result was determined by the votes of women. The plea of defendants in error disclosed the number of votes cast by men and the number cast by women and how these votes

were cast. The proof sustains the averment of the plea, and the bill of exceptions states that upon consideration of the facts proven the court found the issues for defendants in error. Plaintiff in error excepted to the rendition of the judgment, and the question of the legality of the women's votes is properly before us. Defendants in error do not indicate wherein the record discloses that this question was not presented to the court below, but, on the contrary, assert in their brief that it is the sole question relied on for reversal by plaintiff in error and meet it with an argument on the merits.

In *People* v. *Peltier*, 265 Ill. 630, we held that the provision of the Woman's Suffrage act of 1913 that women may vote upon all questions or propositions submitted to a vote of the electors of the various municipalities and political subdivisions of the State does not authorize women to vote upon the question of organizing a high school district under the Township High School act of 1914, for the reason that school districts are not among the municipalities mentioned in the act of 1913 and do not become political subdivisions until after the organization thereof. For the reasons there given, women were not entitled to vote at the election of March 28, 1914, and the superior court erred in not entering a judgment of ouster.

Defendants in error finally insist that this election has been legalized by an act of the General Assembly approved April 24, 1915, and entitled "An act to legalize certain elections held since July 1, 1911, under and by virtue of 'An act to authorize the organization of high school districts,' approved June 5, 1911, and in force July 1, 1911, and all proceedings taken in pursuance thereof, and to abate certain pending suits." This act is as follows:

"Section 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly:* That whenever any election has been held since July 1, 1911, under and by virtue of 'An act to authorize the organization of

high school districts,' approved June 5, 1911, and in force July 1, 1911, at which the votes of women may have been the deciding factor in carrying such election then, and in such case, such elections are hereby made and held to be legal, valid and binding, and all high school districts organized under and by virtue of such elections and in pursuance thereof, if otherwise legally organized, are hereby held and declared to be duly and legally organized and made valid and binding, and all officers elected and all acts done under and by virtue of such elections and in pursuance thereof, if otherwise legal, are hereby made valid and declared to be legal, binding and of full force and effect, and all pending suits, questioning the validity of such elections on the aforesaid grounds, shall abate: *Provided,* that this act shall not apply to any district, portions of which have since the organization of such district, been later organized into or as a part of any other district or districts.

"Sec. 2. Whereas, an emergency exists, therefore, this act shall be in full force and effect from and after its passage and approval." (Laws of 1915, p. 630.)

The right of the General Assembly to pass a curative act affecting this election is not questioned by either party. The general rule is, that where there is no constitutional prohibition the legislature may validate by a curative act any proceedings which it might have authorized in advance. (*People* v. *Wisconsin Central Railroad Co.* 219 Ill. 94; *People* v. *City of Rock Island,* 271 id. 412.) Under the holding in *Scown* v. *Czarnecki,* 264 Ill. 305, the legislature had the power, if it had seen fit, to grant to women the right to vote at an election held to determine whether or not a township high school should be organized. Having the power to have done that at the time of the passage of the act of 1911 it had the power to validate an election held after the passage of that act in which women had been permitted to vote and their votes held to be decisive of the result.

The only question at issue between the parties in respect
to the effect of the curative act is whether or not the pro-
viso applies here. This act was passed after the entry of
judgment in the superior court, and necessarily the record
does not disclose affirmatively whether this district comes
within the proviso of the curative act. It is contended on
the part of defendants in error that the curative act oper-
ates to validate this election for the reason that it is im-
possible for the proviso to apply in this case. The basis of
this contention is, that from the time of the filing of the
petition with the county superintendent of schools for the
holding of an election for the organization of the district
until the entry of the judgment herein it was legally im-
possible for any portion of this territory to be organized
into or as a part of any other district or districts, for the
reason that between the time of the filing of the petition
and the holding of the election on March 28, 1914, no other
petition for the incorporation of any part of this territory
into any other district or districts could be legally filed or
entertained, and that after the election on March 28, 1914,
there was at least a *de facto* school district in existence, the
organization of which was completed upon the election of
a board of education. It is further contended that the pro-
viso could not apply since the entry of judgment in the
superior court, as after that judicial determination the or-
ganization became *de jure* and no part of the territory con-
tained in the district could be legally organized into any
other district or districts. Counsel are in error as to the
position they take in regard to what might lawfully occur
between the date of the election and the entry of the judg-
ment in the *quo warranto* proceedings in the superior court.
In *West Chicago Park Comrs.* v. *City of Chicago,* 152 Ill.
392, we stated that it is a well recognized principle of law
that there cannot be at the same time, within the same ter-
ritory, two distinct municipal corporations exercising the
same powers, jurisdiction and privileges. This principle

has often been re-announced and has always been adhered
to. It applies only, however, to municipal corporations
which have been legally organized, and it does not follow
from its application that a *de jure* organization may not
be effected in territory in which a *de facto* organization is
established and is exercising its jurisdiction.

Defendants in error cite a number of cases which fol-
low the holding in *West Chicago Park Comrs.* v. *City of
Chicago, supra,* in support of their contention that it was
not possible, after the institution of the proceedings to or-
ganize this district, to incorporate any part of this territory
in another district, but in none of the cases cited was the
legality of the organization of the first municipality ques-
tioned. The precise question whether a *de jure* munici-
pality can be organized in the territory of a like *de facto*
municipality and then oust the *de facto* organization, so far
as our investigation discloses has never been directly passed
upon in this State, but the principle has been recognized in
*People* v. *Crews,* 245 Ill. 318. In holding that Golden Gate
Drainage District could not include within its boundaries
lands lying wholly within Union Drainage District No. 1,
which had been organized prior to the organization of said
Golden Gate Drainage District, we remarked in that case
that no question was raised as to the legality of the organi-
zation of Union Drainage District No. 1. In *State* v. *Town
of Winter Park,* 25 Fla. 371, this question arose, and it
was there held that there cannot be two municipal corpora-
tions at the same time exercising the same jurisdiction and
powers over the same territory, but that this means two
legal and effective corporations, and does not apply where
there is a *de facto* corporation without right and a corpo-
ration legally organized but not in actual government un-
til the former is ousted. The court further held that the
functions of the legal corporation are in abeyance until the
ouster, when they come into full activity.

It will thus be seen that it was possible between the time of the holding of the election of March 28, 1914, at which illegal votes were received which were decisive of the result, and the entry of the judgment in the *quo warranto* proceedings in the superior court, to legally organize portions of this district into or as a part of some other district or districts. If such has not been done then the curative act should be given effect.

The judgment of the superior court is reversed for the errors indicated, and as this record does not disclose whether the proviso of the curative act applies and as that act was passed since the hearing in the superior court the cause is remanded, with directions to permit the parties to make proof as to whether this case comes within the proviso of the curative act of April 24, 1915.

*Reversed and remanded, with directions.*