*Reversed and remanded.*

---

(No. 12018.—Decree affirmed.)

ED ZEIGLER, Appellee, *vs.* E. L. DOUGLAS *et al.*—(THE BOARD OF EDUCATION OF TOWNSHIP HIGH SCHOOL DISTRICT No. 125, Appellant.)

*Opinion filed April 17, 1918.*

1. SCHOOLS—*the act of 1915 validated women's votes for high school district regardless of how they voted.* The act of April 24, 1915, validated the votes of women at elections for the organization of high school districts whether they voted for or against the organization.

2. SAME—*what necessary to legalize high school district under the validating act of 1917.* The validating act of 1917 applies to all high school districts composed of compact and contiguous territory, provided an election called by the county superintendent has been held and a board of education chosen, and if those two conditions have been complied with the district is legalized, regardless of other questions.

3. SAME—*what high school district has prior right to overlapping territory under section 3 of validating act.* Where two adjacent high school districts validated under the act of 1917 have overlapping territory, section 3 of said act was intended to include such territory in the district which had first established and then conducted a high school, and where one district was first in holding the election to establish a district and has purchased a site and erected a school house thereon it will be entitled to overlapping

territory in preference to an adjacent district which was first to elect a board of education but has conducted its school in rented property and has done nothing toward the purchase of a site, although both schools were opened on the same day.

.4. SAME—*two school districts cannot legally exist at same time in same territory.* Two school districts cannot legally exist at the same time in the same territory, exercising the same powers and jurisdiction, and where the territories of two adjacent high school districts overlap, section 3 of the validating act of 1917 must be so construed as to bring one district or the other within its terms.

DUNCAN, J., dissenting.

APPEAL from the Circuit Court of Jasper county; the Hon. THOMAS M. JETT, Judge, presiding.

ANDREWS & REAL, and FITHIAN & KASSERMAN, for appellant.

ALBERT E. ISLEY, for appellee.

NEWLIN, PARKER & NEWLIN, for Township High School District No. 203.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The board of education of High School District No. 203 of Crawford and Jasper counties and the board of education of High School District No. 125 of Jasper county each levied taxes upon territory in Jasper county two miles wide and six miles long, containing twelve sections of land. The county clerk of Jasper county elected to recognize district 125 and refused to extend the tax levied by the board of education of district 203, and the latter district filed a petition in the circuit court of Jasper county for a writ of *mandamus* commanding the clerk to extend the tax levied by it. The court awarded the writ, and upon an appeal to this court it was decided that the organization of a school district could not be questioned collaterally in a proceeding for *mandamus* and that the county clerk had no right to

determine that question, and accordingly the judgment was affirmed. (*People* v. *Powell*, 274 Ill. 222.) Thereupon the appellee, Ed Zeigler, an owner of land and tax-payer in the disputed territory, filed his bill in equity in this case, in his own right and in behalf of all other tax-payers who chose to join with him, against the two boards of education and the county clerk for a determination which board had a right to exercise corporate powers and levy taxes in the disputed territory. The county clerk answered, admitting that taxes had been levied by both districts on the lands and property in the same territory and certificates of the levies had been filed in his office, and he disclaimed any interest or knowledge as to other matters alleged in the bill. The boards of education filed separate answers claiming the right to levy and collect taxes and exercise corporate powers in the territory, and replications having been filed the cause was heard on a stipulation of facts. The court entered a decree finding that district 203 was entitled to levy taxes in the territory and enjoining the county clerk from extending taxes levied by district 125.

There were attempts to organize the two districts under the Township High School act of 1911, which was held to be unconstitutional and void in *People* v. *Weis*, 275 Ill. 581. The proceedings were carried on during the same period of time and each district established and conducted a high school. The General Assembly passed an act approved June 14, 1917, legalizing high school districts in which there had been an election in favor of organization and a subsequent election of a board of education, and section 3 of the act is as follows: "Whenever there are two such districts which overlap in territory, that district which shall have first established and now continues to conduct a high school, is hereby validated and confirmed." (Laws of 1917, p. 745.) The question to be decided is which of the two districts had first established and at the time of the passage of the act continued to conduct a high school.

The facts agreed upon are as follows: On March 6, 1915, a petition signed by more than fifty legal voters residing on one hundred and eight sections of land in Crawford and Jasper counties, the greater part of which was in Crawford county and included the disputed territory in Jasper county, filed a petition with the county superintendent of schools of Crawford county for an election to vote for or against establishing a township high school district. The county superintendent ordered and gave notice of an election to be held on March 20, 1915. The election was held and resulted in favor of establishing a district, and the superintendent of schools numbered it 203. On March 29, 1915, a petition was filed with the superintendent of schools of Jasper county praying for the organization of a township high school district in forty-eight sections of land in that county, including twelve sections embraced in the other petition. The county superintendent gave notice of an election to be held on April 8, 1915, for the purpose of establishing a high school district in the territory described in the petition. The election was held and resulted in favor of the establishment of the high school district, and the superintendent gave it the number 125. At the election held on March 20, 1915, for the establishment of district 203, part of the voters were women, and it was held in *People* v. *Peltier,* 265 Ill. 630, that women could not vote at such an election. On March 30, 1915, a second petition was presented to the superintendent of schools of Crawford county for the organization of the same territory into a township high school district, and the superintendent called a second election to be held April 9, 1915. Before the time for holding the second election the superintendent discovered that a majority of the votes cast by men were in favor of establishing the district and he countermanded the order for the election. It was held and returns were made, which he refused to receive. On April 10, 1915, a petition was filed with the superintendent of schools of Crawford county for

an election of a board of education for district 203, and notice was given and an election held on April 24, 1915, at which a board of education for that district was elected. On April 11, 1915, the county superintendent of Jasper county, in pursuance of a petition, ordered an election for a board of education for district 125. The election was held on April 23, 1915, one day before the election of a board of education in district 203, and on April 24, 1915, (the day of the election in district 203,) the board of education of district 125 met and levied a tax of $5000 for educational purposes and $1000 for building purposes. On May 10, 1915, a petition was filed for an election in district 203 to vote on the following propositions: (1) For the location of a school house site; (2) for or against purchasing a school house site; (3) for or against building a school house; (4) for or against issuing bonds in the sum of $50,000 to purchase a site and build a school house. The election was held on May 22, 1915, and a site was chosen and a majority of the votes were in favor of each proposition. The board of education purchased the site selected and paid $6000 therefor, and afterward issued and sold bonds to the amount of $50,000 and built a high school house and paid $75,000 for building, furnishing and equipping the same. On May 15, 1915, the board of education of district 125 rented property at $210 a year in which to conduct a high school and elected a principal and employed an assistant teacher. On July 6, 1915, the same board appointed committees, and on August 31, 1915, employed janitors and borrowed money to pay current expenses. The school building in district 203 authorized by the election of May 10, 1915, not having been constructed, the board of education of that district rented property for a high school and paid rent before the completion of the school building to the amount of $2600. On the same day, September 6, 1915, the two boards of education opened and commenced terms of school in the respective districts in rented property and

since that time have maintained and conducted high schools in their respective districts. Elections were held in each district in 1916 and 1917 at which members of the boards of education were elected, and both districts levied taxes in 1915, 1916 and 1917 on the twelve sections in question in Jasper county.

It is argued for one side that district 203 fulfilled the condition prescribed in section 3 of the act of June 14, 1917, because the petition for the establishment of the district was first filed and the election first held, and for the other side it is argued that district 125 fulfilled such condition because a board of education was first elected and organized and assumed the exercise of corporate powers, which completed the establishment of that district. The petition and election for the establishment of district 203 were first in point of time and the election of March 20 was a valid one. Women were not legal voters at that election, but their votes were made legal and valid by the act passed with an emergency clause and approved April 24, 1915. That act was held valid in *People* v. *Militzer*, 272 Ill. 387, which by its literal terms only made the votes of women legal provided they voted for the establishment of a district. The act could only be held constitutional as authorizing women to vote at elections for the organization of high school districts whether they voted one way or the other. (*People* v. *Vaughan*, 282 Ill. 163.) Even if the votes of women were rejected there was still a majority in favor of the establishment of the district. The election, however, was only one of the steps required for the organization of a district which could exercise corporate powers, and if the act of 1911 had not been void district 125 would have been completely organized as a high school district before district 203. The act of 1911, however, was void and all steps taken under it were an absolute nullity and had no effect. Neither district had any existence for want of any law under which it could be created. The act of June 14, 1917, contained but two condi-

tions to make a high school district legal: First, that an election called by the county superintendent had been held; and second, that a board of education had been chosen. If a district was within the terms of the act it was legalized, regardless of every other question. (*People* v. *Madison,* 280 Ill. 96.) The language of section 3 evidently did not clearly express the legislative intention in merely validating and confirming the district which had first established and then continued to conduct a high school where territory overlapped. It must have been the intention of the legislature to validate and confirm both high school districts except as to overlapping territory and as to such territory to include it in the district which had first established and then conducted a high school. The act of 1911 being void and so recognized in the curative act, section 3 must be held to apply only to the actual establishing and conducting of a high school, and both districts opened a high school at the same time and thereafter conducted the same and were conducting their respective schools when the curative act was passed. The two, however, could not legally exist at the same time in the same territory, exercising the same powers and jurisdiction, (*West Chicago Park Comrs.* v. *City of Chicago,* 152 Ill. 392,) and the act must be so construed as to bring one or the other within its terms. Although the schools had been opened on the same day, district 125 at the time of the passage of the act had not selected a site and had done nothing toward such selection or the purchase of a site or the building of a school house. The school conducted was in rented property and temporary in its nature, while district 203 had chosen a site and purchased it and built a school house, thereby giving a permanent character to the school, and under all the circumstances we conclude that district 203 had the prior right.

The decree is affirmed.

*Decree affirmed.*

Mr. JUSTICE DUNCAN, dissenting.