(No. 13353.—Reversed and remanded.)

THE PEOPLE ex rel. George M. Cole, Appellant, vs. ELI V. KINSEY et al. Appellees.

*Opinion filed October 23, 1920.*

1. ELECTIONS—*when an irregularity in appointment of electors will not invalidate school election.* The fact that a county superintendent appointed three electors to conduct an election and directed that two of them should act as judges and one as clerk, without specifying which two should act as judges and which one as clerk, is not such an irregularity as to require the election to be declared void, where it is not claimed that the result of the election was affected or that anyone was denied his right to vote.

2. SCHOOLS—*curative act of 1915 did not give women right to vote at all elections for high school districts.* The curative act of 1915 legalizing elections for the organization of high school districts under the void act of 1911 where the votes of women were the deciding factor does not give women the right to vote at all elections for the organization of high school districts, as the act is only curative and expresses no purpose to grant the right to vote at future elections. (*People* v. *Vaughan,* 282 Ill. 163, overruled.)

3. CONSTRUCTION—*court cannot construe into an act a subject not mentioned in title.* As the legislature is prohibited from including in an act a subject not mentioned in the title, the court cannot, by construction, include in an act a subject not mentioned either in the act or title.

4. STATUTES—*what is the object of a curative act.* The object of a curative act is not to change the law governing future action but to waive some requirement of the law in regard to past action.

5. QUO WARRANTO—*laches of the relator does not bar the public from prosecuting information.* The fact that the relator has voted at an election to organize a high school district does not prevent his filing an information to question the legality of the election and the organization of the district, as *laches* or the acquiescence of individuals does not bar the public and the conduct of a relator does not constitute an estoppel except where the information is filed for his private and exclusive benefit.

CARTWRIGHT, C. J., and CARTER and STONE, JJ., dissenting.

APPEAL from the Circuit Court of McDonough county; the Hon. HARRY M. WAGGONER, Judge, presiding.

EDWARD J. BRUNDAGE, Attorney General, (FLACK, FLACK & KERMAN, and SCOFIELD, HARTZELL & CALIFF, of counsel,) for appellant.

LAWYER & HAINLINE, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

This appeal from a judgment of the circuit court of McDonough county denying leave to file an information in the nature of *quo warranto* charging the appellees with holding and executing without warrant the office of members of the board of education of a community high school district presents two questions. The first is as to the validity of an election upon the question of organizing the district. The county superintendent appointed three electors to conduct the election and directed that two of them should act as judges and one as clerk, without specifying which two should act as judges and which one as clerk. No other irregularity in the conduct of the election is alleged. The appellees, resisting the application for leave to file the information, presented affidavits showing that the county superintendent orally designated who should act as judges and who should act as clerk, and that the persons named did act, respectively, in those capacities. This was not such an irregularity in the conduct of the election as to require the election to be declared void. It is not claimed that it interfered in any way with the result of the election, that anyone having the right to vote was not permitted to do so, or that anyone voted who did not have the right to vote. *Hodge* v. *Linn*, 100 Ill. 397; *Behrensmeyer* v. *Kreitz*, 135 id. 591; *Ackerman* v. *Haenck*, 147 id. 514; *Choisser* v. *York*, 211 id. 56.

The second question is as to the right of women to vote at the election on the question of the organization of the district. It was held in *People* v. *Peltier*, 265 Ill. 630, that women had no right to vote at such an election. No stat-

ute has since been passed expressly authorizing them to vote
at such an election, but in 1915 an act was passed entitled
"An act to legalize certain elections held since July 1, 1911,
under and by virtue of 'An act to authorize the organiza-
tion of high school districts,' approved June 5, 1911, and
in force July 1, 1911, and all proceedings taken in pursu-
ance thereof, and to abate certain pending suits." This act
is as follows:

"Section 1. *Be it enacted by the People of the State of
Illinois, represented in the General Assembly:* That when-
ever any election has been held since July 1, 1911, under
and by virtue of 'An act to authorize the organization of
high school districts,' approved June 5, 1911, and in force
July 1, 1911, at which the votes of women may have been
the deciding factor in carrying such election then, and in
such case, such elections are hereby made and held to be
legal, valid and binding, and all high school districts organ-
ized under and by virtue of such elections and in pursuance
thereof, if otherwise legally organized, are hereby held and
declared to be duly and legally organized and made valid
and binding, and all officers elected and all acts done under
and by virtue of such elections and in pursuance thereof, if
otherwise legal, are hereby made valid and declared to be
legal, binding and of full force and effect, and all pending
suits, questioning the validity of such elections on the afore-
said grounds, shall abate: *Provided,* that this act shall not
apply to any district, portions of which have since the or-
ganization of such district, been later organized into or as
a part of any other district or districts.

"Sec. 2. Whereas, an emergency exists, therefore, this
act shall be in full force and effect from and after its pass-
age and approval." (Laws of 1915, p. 630.)

In the case of *People* v. *Militzer,* 272 Ill. 387, this act
was held to be valid and effective to legalize the organiza-
tion of a school district under the act of June 5, 1911, by
virtue of an election held prior to the passage of the cura-

tive act at which women voted and their votes were the deciding factor in carrying the election. At the same time there was in force a provision of the general School law for the establishment of township high schools, and on April 4, 1916, an election was held on the proposition to establish a township high school for the benefit of township 20, range 10, in Lee county, under that provision, at which women voted, and their votes were decisive in favor of the proposition, the men casting a majority of six votes against it. The question of the validity of this election and the organization of this high school district arose in the case of *People* v. *Vaughan,* 282 Ill. 163, and it was held that the act of 1915 gave women the right to vote at all elections for the organization of high school districts. In so holding we fell into error. The act of 1915 did not purport to grant the right to vote. There are no words which indicate such purpose. Such a grant would not have been constitutional because not within the title of the act, which purported only to legalize certain elections held since July 1, 1911. It was a curative act which affected only things done in the past and did not purport to lay down any rule for future action. It was said that the result necessarily followed from the holding of the act valid in the case of *People* v. *Militzer, supra,* on the ground that the General Assembly had power, when the Township High School act was passed, to authorize women to vote at such elections, because the General Assembly could not at any time have passed an act authorizing women to vote at certain elections for the organization of high school districts but not at other elections for the same purpose, or under one act and not under another enacted for the same purpose, or limiting the right to vote at elections in which their vote was the deciding factor in carrying the election in favor of the proposition for organizing the district. This argument may demonstrate that the decision in the case of *People* v. *Militzer, supra,* was wrong in holding the curative act consti-

tutional, but it does not justify inserting in that act a grant of rights of which the title makes no mention and which the legislature itself did not include in the act. The legislature is prohibited from including in an act a subject not mentioned in the title, and certainly the court cannot include in an act by construction a subject not mentioned either in the act or the title. The object of a curative act is not to change the law governing future action but to waive some requirement of the law in regard to past action. (*People* v. *Madison*, 280 Ill. 96.) The act of 1915 did not give women the right to vote at any election.

The appellees insist that the relator having voted at the election cannot question its legality. *Laches* or the acquiescence of individuals does not bar the public, and the conduct of a relator does not constitute an estoppel except where the information is filed for his private and exclusive benefit. *People* v. *Keigwin*, 256 Ill. 264.

The circuit court should have permitted the information to be filed. Its judgment will be reversed and the cause remanded, with directions to allow the motion to file the information.        *Reversed and remanded, with directions.*

CARTWRIGHT, C. J., and STONE, J., dissenting:

After this court decided that women had no right to vote at an election organizing a community high school district the legislature passed a curative act, which came before the court in *People* v. *Militzer*, 272 Ill. 387, when it was decided that the act was valid, on the ground that the legislature might, in the act authorizing the organization of such districts, have authorized women to vote. The right of women to vote at an election subsequently held was considered in *People* v. *Vaughan*, 282 Ill. 163, and it was decided that inasmuch as the legislature could not have authorized women to vote at some elections for the organization of high school districts and not at others, and it had been held that the curative act was valid, the curative act gave

women the right to vote at all elections for the organization of such districts. That decision was either correct, or the curative act was void and the decision holding it valid was wrong. The opinion adopted in this case holds that both decisions were wrong, and the final resting place of the decision is that the curative act was in violation of the constitution, because it could only be held within the power of the legislature if it authorized women to vote at all elections for the organization of high school districts. Whether that conclusion is right or wrong, and not conceding that it is right, we are satisfied that the decision should not be overruled and numerous high school districts all over the State be destroyed. Courts refuse to re-examine and over-rule decisions which have become a rule of property, and the decisions here overruled not only involve questions of property, contracts, bonds and obligations, but public interests of great importance. Neither the decision that the curative act was valid nor that women had a right to vote at high school elections is *res judicata* except as to the particular districts involved in the cases decided, and this decision will create widespread disaster and confusion. In neither of the cases which have been before this court was the discovery made by any party or counsel, or by any member of the court, that the curative act was invalid because it limited the right of women to vote at elections which had been held, nor that women were not entitled to vote as a necessary consequence of the decision that the act was valid.

Mr. JUSTICE CARTER; also dissenting:

I do not concur with the final conclusion reached in the opinion in this case. Conceding that the opinion is right and that if this were a matter of first impression the decisions in *People* v. *Militzer,* 272 Ill. 387, and *People* v. *Vaughan,* 282 id. 163, are wrong, still I think that on the principle of *stare decisis* the judgment in this case should

be affirmed. Parties should not be encouraged to seek re-examination of determined principles. The establishment of a certain guide is of more significance than the precise form of the rule, and substantial justice may be more often promoted by adhering to an erroneous decision than by overthrowing a rule once established. (*Weaver* v. *First Nat. Bank of Chicago,* 76 Kan. 540.) Where the error of a previous decision is recognized, the question whether or not the rule of *stare decisis* shall be followed becomes a simple choice between relative evils. The rule should be adhered to unless it appears that the principle established must be productive of greater mischief to the community than can possibly ensue from not following previous decisions on the subject. (7 R. C. L. 1009.) Stability and uniformity of decisions in judicial proceedings conduce so much to the welfare and happiness of the people that when a question has been once settled and no serious question is liable to arise prejudicial to the public interest such adjudication ought to stand. (*Koch* v. *Sheppard,* 223 Ill. 172; *Heidenreich* v. *Bremner,* 260 id. 439.) The points upon which this case is reversed received serious consideration by this court in its former decisions and the principles then established have now been the rule for more than two years. The act was held to be a valid exercise of legislative power in *People* v. *Militzer, supra,* and the identical points raised here upon which this case is decided were passed upon and decided contrary to the conclusion here reached in *People* v. *Vaughan, supra,* and again on petition for rehearing in that case. Later the same principle was approved in *Zeigler* v. *Douglas,* 283 Ill. 407. "The rule of *stare decisis* is founded largely on considerations of expediency and sound principles of public policy, it being indispensable to the due administration of justice, especially by a court of last resort, that a question once deliberately examined and decided should be considered as settled and closed to further argument, and the courts are slow to interfere with the prin-

ciple announced by the decision, and it may be upheld even though they should decide otherwise were the question a new one." (15 Corpus Juris, 918.) The courts will not, as a general rule, inquire into and reconsider a question as to the construction and operation of the statute or constitution when such construction or principle has been discussed and decided by the court. (11 Cyc. 748.) "The most indispensable guaranty of civil liberty is the 'open administration of justice according to known laws.' The law can be known only if fixed rules once established are consistently adhered to. * * * 'Respect for precedents, alone, can secure stability and uniformity of the law. Without such respect it would be a shifting quicksand.' If ever there should be an adherence to former decisions, it should be in cases of construction of the constitution involving the rights of citizens as declared by that instrument. There is no higher privilege of citizenship in the State than that of suffrage." *Scown* v. *Czarnecki,* 264 Ill. 305.

There can be no question, under the present state of the Federal amendment as to woman suffrage, that women will be entitled to vote hereafter on all questions that are presented to any locality or class of citizens for popular suffrage and that any future legislation by any State on this question is of little importance. As a matter of public policy, it seems to me beyond peradventure, in view of the previous decisions of this court,—which, doubtless, have been followed in many localities in this State,—that much greater mischief will arise by overruling the previous decisions of this court on this question than will arise by adhering to the principles therein laid down. Whatever view we might feel inclined to take if the question were undecided, in my judgment it is the duty of this court to adhere to its former decisions and to hold that the question here under discussion is not now and here open for review. *Richter* v. *Burdock,* 257 Ill. 410.