(No. 13962.—Judgment affirmed.)

THE PEOPLE *ex rel.* E. C. Saddoris *et al.* Appellants, *vs.*
I. N. WALKER *et al.* Appellees.

*Opinion filed December 19, 1922.*

1. SCHOOLS—*the Women's Suffrage act of 1913 did not author-
ize women to vote at elections to organize school districts.* The
Women's Suffrage act of 1913, specifying certain elections at which
women were entitled to vote, did not authorize them to vote at elec-
tions to organize school districts.

2. SAME—*when the validating act applies though illegal votes
were cast.* The act of 1921 (Laws of 1921, p. 797,) validating com-
munity high school districts in cases where an election has been
called by the county superintendent of schools and a majority of
the inhabitants of the territory affected have voted in favor of
organizing the district, applies to a district coming within the terms
of the act though illegal votes of women were a deciding factor
in the election. (*People* v. *Young,* 301 Ill. 67, followed.)

CARTWRIGHT, CARTER and DUNN, JJ., dissenting.

APPEAL from the Circuit Court of Champaign county;
the Hon. FRANKLIN H. BOGGS, Judge, presiding.

ROY R. CLINE, State's Attorney, GREEN & PALMER, and
ANDREW J. MILLER, (HENRY I. GREEN, and ORIS BARTH,
of counsel,) for appellants.

F. E. WILLIAMSON, O. M. JONES, and A. R. HALL,
(WILLIAMSON & WINKELMAN, JONES & LEVIN, and HALL
& HOLADAY, of counsel,) for appellees.

Per CURIAM: By leave granted by the circuit court of
Champaign county on a verified application therefor, an in-
formation was filed by the State's attorney in the name
of the People, on the relation of more than 150 persons,
who alleged that they were legal voters and property own-
ers residing in the territory therein described, comprising
fifty-six sections of land, calling upon appellees to show
by what warrant they claimed the existence of a commu-
nity high school district in such territory under the name

of St. Joseph Community High School District No. 305 in Champaign county, State of Illinois, and by what warrant they claimed to hold and exercise the offices of members of the board of education in such pretended district. The defendants filed two pleas to the information: First, a plea of justification; and second, a plea of *laches* of the relator, which latter plea was abandoned. The plea of justification set forth that there was an election held in the specified territory on December 4, 1919, for the purpose of voting on the proposition whether such territory should be organized as a community high school district. The verified application for leave to file the information charged that both men and women voted at the election held for the purpose of submitting the question of the organization of the district; that the ballots were all placed in the same ballot-box and were not separately counted or canvassed, and that the votes of the women were the deciding factor in carrying the election. In regard to that subject the plea of justification alleged that at said election 112 "male votes" and 96 "female votes" were cast for the proposition and 71 "male votes" and 38 "female votes" against the proposition; that a majority of each kind of votes was in favor of establishing the community high school, and by virtue of the election the territory became a community high school district, designated by the county superintendent of schools as St. Joseph Community High School District No. 305 in Champaign county, State of Illinois. The plea also alleged that an election for five members of a board of education was held on December 20, 1919, and that the defendants received the highest number of votes and were duly elected members of the board of education. Replications were filed to the pleas, and the replication to the plea of justification denied the averment of the plea that the proposition submitted received the number of votes alleged, or that a majority of all the legal votes cast at the election were in favor of establishing the district. The issue formed by the rep-

lication was submitted to the court for trial, and it was proved that only one ballot-box was used, in which ballots of both men and women were placed, and there was no evidence in the record as to how any person voted. The return by the election judges recited that there were 203 votes for the proposition, 114 votes against it and one spoiled ballot. The return contained a poll of the voters, 318 in number, and, excluding the spoiled ballot, there were 317 ballots. It was stipulated that either 128 or 129 ballots were cast by women and 188 or 189 were cast by men.

Women had no right to vote at the election and the 128 or 129 votes cast by them were illegal and unauthorized, so that there were no more than 188 or 189 votes lawfully cast and which might be counted on the proposition. The Women's Suffrage act of 1913, specifying certain elections at which women were entitled to vote, did not authorize them to vote at an election to organize a school district. *People* v. *Peltier,* 265 Ill. 630.

After this cause was submitted to the court and taken under advisement for a decision under the evidence and the existing laws, the legislature passed an act which contained this provision in section 1: "That in all cases where a majority of the inhabitants of any contiguous territory, voting on the proposition, have voted at an election called for the purpose by the county superintendent of schools, in favor of the organization of such territory into a community high school district, and where, at a subsequent election similarly called and held, a board of education has been chosen for such district, such territory is hereby declared legally and validly organized and established as a high school district, and a valid and existing school district and body politic and corporate of this State for the purpose of establishing and maintaining a high school. The board of education acting for such district is hereby declared to be the duly constituted authority thereof, and each such board shall hereafter consist of five members, and shall be elected

and organized in the same manner and have the powers and discharge the duties of boards of education of school districts as provided by sections 86, 126 and 127 of an act entitled, 'An act to establish and maintain a system of free schools,' approved and in force June 12, 1909, as said sections now exist or may from time to time be amended or supplemented." There were further provisions that irregularities in the calling, holding or conducting of such an election were cured; that the board of education, acting for the district, was declared to be the duly constituted authority thereof and all proceedings of the district and board of education were declared legal and valid, and there was an emergency clause. (Laws of 1921, p. 797.) It is claimed that this act applies in this case and makes this territory a valid district, and, on the other hand, it is insisted that the passage of the act after the submission of the cause was a decision of the legislature directing this court what the decision should be, and therefore a usurpation of judicial authority. It is not contended that the legislature may not change the law for future decisions, but that this act, if applied to this case, would be a decision by the legislature. The question will not be considered, because the act did not validate or purport to validate the election. Whether the act be regarded as curative or as an original act of legislation creating a district in which the holding of an election merely designated the territory in which the legislature by the act created a school district, there were two conditions precedent: First, that there should have been an election called by the county superintendent of schools at which a majority of the inhabitants of the territory voting on the proposition voted in favor of the organization of the territory into a community high school district; second, that at a subsequent election similarly called and held a board of education had been chosen for such district.

The principal question for determination is whether the curative act applies to a case where, as here, the illegal

votes of women were a deciding factor in the election. In *People* v. *Young,* 301 Ill. 67, the third objection was that the election to create the district was void because women, who were not legal voters, were permitted to vote, and this court said: "This act purports to cure all the defects in the organization of the district under consideration. The act clearly disposes of the first three grounds urged against the legality of this district. The legislature had the right to declare this territory to be a school district without the formalities of a petition or an election, and the validating act is broad enough to include within its terms the district in question." The reasons therein given are controlling here. The reference in the act to the elections is descriptive of the territory to which the act applies. (*People* v. *Graham,* 301 Ill. 447.) In *People* v. *Edvander,* 304 Ill. 400, this court said: "The words 'majority of the inhabitants of any contiguous territory' voting on the proposition simply mean the majority of the persons voting on such proposition." Regardless of whether the district was properly and legally organized in the first instance, as held by the trial court, it must be held to have been established under the curative act, and the judgment of the trial court dismissing the proceedings and quashing the information must be sustained.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*

CARTWRIGHT, CARTER and DUNN, JJ., dissenting:

The burden of establishing by evidence the legal organization of the district was upon the defendants, and the People were entitled to judgment unless the defendants exhibited good authority for the exercise of the right claimed by them. They failed to justify by proving that there was a majority of the legal votes cast in favor of the organization of the district but conceded that 129 votes were illegal and only 188 legal votes were cast, that the ballots were all deposited in one box, and that there was no evidence how anyone voted. The cause was submitted to this court for

decision upon the record made in the circuit court, and the only possible judgment upon that record would have been one of ouster. After the cause was argued and submitted to the court and taken under advisement for decision under the evidence and the existing law the legislature passed an act as follows:

"Sec. 1. * * * That in all cases where a majority of the inhabitants of any contiguous territory, having therein all or part of a school district established by special legislative act, voting on the proposition, have voted at an election called by the county superintendent of schools for the purpose, in favor of the organization of such territory into a community high school district, and where at a subsequent election similarly called and held, a board of education has been chosen for such district, such territory is hereby declared legally and validly organized and established as a community high school district, and a valid and existing school district and body politic and corporate of this State for the purpose of establishing and maintaining a high school. The board of education acting for each such district is hereby declared to be the duly constituted authority thereof, and each such board shall hereafter consist of five members and shall be elected and organized in the same manner and have the powers and discharge the duties of boards of education of school districts as provided by sections 86, 126 and 127 of an act entitled, 'An act to establish and maintain a system of free schools,' approved and in force June 12, 1909, as said sections now exist or may from time to time be amended or supplemented.

"Sec. 2. No irregularity, defect or omission whatsoever, in the time or manner of calling, holding or conducting any such elections or in the notice thereof, ballots used therein, or returns thereof, shall be held to invalidate any such elections.

"Sec. 3. All acts and proceedings heretofore done, had or performed by each such district and the persons from

time to time elected and acting as the board of education thereof, such as are authorized to be done, had or performed by school districts or boards of education thereof by the general school laws of the State, are hereby declared to be legal and valid in all respects." (Laws of 1921, p. 799.)

Section 4 declared valid taxes levied by a board of education of any such district notwithstanding the levy had not been made, filed or certified in the manner or within the time prescribed by law. Section 5 provided that when there were two districts overlapping in territory the district first established was validated, and section 6 repealed special legislative acts establishing school districts affected by the act.

Whether the act was a decision of this case by the legislature, and therefore an usurpation of judicial power, or not, is of no importance, because the act did not validate or purport to validate the election which had been held nor make the territory a high school district. The purpose and scope of the act and the legislative intent seem to us as clear and definite as language can make them. There were two conditions precedent to the declaration that the territory referred to in the act was declared legally and validly organized and established as a community high school district: First, that there should have been an election called by the county superintendent of schools at which a majority of the inhabitants of the territory voted in favor of the organization of the territory into a community high school district; and second, that at a subsequent election similarly called and held a board of education had been chosen for such district. The purpose of the act was plainly stated in section 2, which declared that no irregularity, defect or omission whatsoever in the time or manner of calling, holding or conducting any such election, or in the notice thereof, ballots used therein or returns thereof, should be held to invalidate any such election. The act contained no hint of any intention to validate an election where the votes

of women were the deciding factor in carrying the election. If the legislature had had such an intention it knew how to make it effective, since it had passed an act in 1915 validating elections of that kind previously held, (Laws of 1915, p. 630,) and such an act had been held within the legislative power in *People* v. *Militzer, 272* Ill. 387. The condition that there should have been an election at which a majority had voted in favor of the organization of the territory into a community high school district negatives any intention to validate an election where the proposition was carried by the votes of persons not entitled to participate in the election. An election is the expression of a choice by the voters of a body politic. (9 R. C. L. 976.) It is the choice or selection of officers or to determine the issue of questions submitted to the legal voters. (20 Corpus Juris, 55.) By validating an election called by the county superintendent of schools at which a majority voted in favor of the organization of a community high school district the legislature certainly meant by inhabitants of the territory voting at such election persons residing therein, enjoying the right and privilege of voting at elections, and did not mean an assemblage composed not only of legal voters, but of minors, aliens or other classes not entitled to vote or to participate in elections. The legislature could not have intended to give to an election any other than its ordinary meaning as a determination of a question submitted to the legal voters whether the territory should be organized as a community high school district. The omission of any provision that an election should be legal where the votes of women were the deciding factor, and section 2, make it clear that the only intention was to cure irregularities and omissions such as are named in section 2 and to create a district regardless of such irregularities or omissions.