(No. 20263.— )

The People *ex rel.* Hugh V. Murray *et al.* Appellants, *vs.*
B. F. Holmes *et al.* Appellees.

*Opinion filed October 25, 1930.*

Hugh V. Murray, State's Attorney, (Maurice B. Johnston, and June C. Smith, of counsel,) for appellants.

T. T. Hinde, and Wilson & Wilson, for appellees.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

The circuit court of Clinton county denied the petition of the State's attorney for leave to file an information in the nature of *quo warranto* against B. F. Holmes and four others charging them with usurpation of the offices of members of the board of education of Sandoval Community High School District, and the petitioners have appealed.

The facts upon which the information was based were shown by the petition for leave to file, and an affidavit in support of it, as follows: A petition for the organization of the district was filed with the county superintendent of schools of Marion county on April 16, 1921. It purported to be signed by sixty-five legal voters, forty-seven of them men and eighteen women. Upon the order of the county superintendent an election was held on May 14, 1921, on the question of organization, at which both women and men voted, only one ballot-box being used, the men's and women's ballots not being kept separate, so that it could not be determined whether the majority of the men's ballots were for or against organization. The majority of the whole vote was for organization, and the superintendent called an election for members of the board of education for June 4, 1921, when a board of education was elected, and annually since a board of education has been elected, the respondents claiming to be the board duly elected at the last election. They have been performing the duties of a board of education. Since the organization of the district no school house site has been purchased or selected, no bonds have been sold, issued or authorized, no school house has been built or purchased and no obligation of the district has been at any time outstanding. The only things the board of education has done have been to levy and collect taxes, rent a room or rooms and conduct a high school therein, and the conditions and situation of the district and the territory are not different from what they were at the

time of the attempted organization of the district. The only objection urged by the appellants to the organization is the alleged insufficiency of the petition to authorize the calling of the election for the organization of the district because not signed by fifty men voters.

The attempt to organize the district was made under section 89a of the School law, which was passed by the General Assembly in 1919, beccming effective on July 1 of that year. (Laws of 1919, p. 908.) By its terms a petition signed by fifty or more legal voters residing in any contiguous and compact territory described in the petition was required to authorize the county superintendent of schools to call an election upon the question of the organization of the territory as a community high school district, and proceedings for the organization of such a district without the filing of the petition were void.

The petition being signed by forty-seven men and eighteen women, and the eligibility of none of the sign- ers being questioned except the eighteen women, who were claimed to be ineligible only because they were not men, the question is presented whether women were legal voters on April 16, 1921, eligible to sign a petition to organize a community high school district. They were not eligible at the time section 89a was passed, because they were not then legal voters upon the questions of the organization of community high school districts. *People* v. *Kinsey,* 294 Ill. 530; *People* v. *Lowenstein,* 297 id. 395.

At the December term, 1917, it had been held in the case of *People* v. *Vaughan,* 282 Ill. 163, that women were qualified voters upon the question of the organization of high school districts. Nearly three years later this case was overruled by *People* v. *Kinsey, supra,* but in 1919, when section 89a was passed, the judicial construction of the law of the State was that women were legal voters upon the question of the organization of high school districts. It is argued by the appellees the General Assembly must be pre-

sumed to have known in 1919 the construction of the law by the Supreme Court in 1917 and to have considered such construction in using the words "legal voters" in section 89a, and the fact that the construction was erroneous and later was overruled and reversed by the court is immaterial. What might be the effect of a change in the view of the Supreme Court on a constitutional question where the General Assembly has enacted legislation based on the earlier decision and persons acting in reliance upon the validity of the legislation have changed their position in such a manner as to materially affect their interests we need not now decide. The General Assembly may be presumed to have had knowledge of the decision that women were legal voters on the question of the organization of high school districts in *People* v. *Vaughan, supra,* when it enacted section 89a, and to have enacted that section with reference to that knowledge. The petitioners who filed the petition on April 16, 1921, however, and the superintendent of schools who received it, must also be presumed to have known of the decision in *People* v. *Kinsey, supra,* that women were not legal voters in such elections and therefore not qualified to sign the petition. They must also be presumed to have known of the ratification by the States of the nineteenth amendment of the constitution of the United States and the proclamation of the Secretary of State of the United States on August 26, 1920, declaring that amendment adopted. That amendment provided that "the right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of sex." The effect of this statute was to erase instanter from the constitution and laws of the State of Illinois every provision restricting the right of women to vote, and from August 26, 1920, women have had the same right to vote in this State on all questions as men have. The amendment did not confer upon women the right to vote. The right of suffrage is derived from the State.

The amendment to the Federal constitution merely provided that no State should discriminate concerning the right to vote between citizens on account of sex. The word "male" was stricken from article 7 of the constitution and from every place where it occurs in the statutes in regard to the right of suffrage. This was stated in *People* v. *Barnett*, 319 Ill. 403, and had been previously decided in principle by the Supreme Court of the United States in *Neal* v. *Delaware*, 103 U. S. 370, and *Ex parte Yarbrough*, 110 id. 651, cases involving the effect of the fifteenth amendment of the Federal constitution, which provides that the right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color or previous condition of servitude, being in the exact language of the nineteenth amendment except that instead of the word "sex" in the nineteenth amendment the fifteenth has the words, "race, color or previous condition of servitude." The last case cited states: "While it is quite true, as was said by this court in *United States* v. *Reese*, 92 U. S. 218, that this article gives no affirmative right to the colored man to vote and is designed primarily to prevent discrimination against him whenever the right to vote may be granted to others, it is easy to see that under some circumstances it may operate as the immediate source of a right to vote. In all cases where the former slave-holding States had not removed from their constitutions the words 'white man' as a qualification for voting, this provision did, in effect, confer on him the right to vote, because, being paramount to the State law and a part of the State law, it annulled the discriminating word 'white,' and thus left him in the enjoyment of the same right as white persons. And such would be the effect of any future constitutional provision of a State which should give the right of voting exclusively to white people, whether they be men or women.—*Neal* v. *Delaware*, 103 U. S. 370."

28

On April 16 and on May 14, 1921, and on all other dates since August 26, 1920, women have been legal voters or electors in the State of Illinois and every other State in the Union to the fullest extent to which the right of suffrage has been conferred on men by the respective States.

The appellants cite the case of *People* v. *Barnett, supra,* as involving a question very similar to the question in this case. That case in no way involved the right of women to vote. The question involved was the right of women to serve on juries. The Jury Commissioners act in force in counties containing more than 250,000 inhabitants provides for the preparation, quadrennially, of a list of all electors between the ages of twenty-one and sixty years possessing the necessary legal qualifications for jury duty, to be known as the jury list, and to be revised and amended annually in the discretion of the commissioners, from which the commissioners are required from time to time to select the requisite number of names to put into a box known as the jury box, and also the necessary number of names to be put in a box known as the grand-jury box, from which jurors and grand jurors are to be drawn in the manner provided by law. Not all electors are eligible to the jury list, but to be so eligible they must be between the ages of twenty-one and sixty years and have the necessary legal qualifications for jury duty. Those qualifications are provided in the act concerning jurors, (Rev. Stat. 1874, p. 630,) as subsequently amended. The nineteenth amendment has nothing to do with the qualification for service as jurors. The laws of this State provide for the selection of jurors from the electors, but not all electors are eligible to be selected as jurors. The Federal government has nothing to do with their selection as jurors.

In *People* v. *Barnett, supra,* it was held that as "electors" at the time of the passage of the Jury Commissioners act included only men, the General Assembly, in directing the jury list to be selected from the lists of all the electors in

the county, could not have had women in contemplation. And this was correct. The legislators could have included in the jury list all electors and nobody else, or only some classes of electors to be determined in such manner as the legislature might elect, or certain classes of electors and certain classes of other persons. The statute need not require all jurors to be electors. The right, the duty or the privilege of serving as a juror, whichever it may be called, is not a natural right, privilege or duty but is conferred or imposed by statute. When the General Assembly granted the right or imposed the duty of jury service on certain classes of electors no one but electors were included, though they might have been. Jury service was not an attribute or quality or privilege or duty which arose from the right of suffrage, and jury service and the right of suffrage were, and are, neither synonymous nor conterminous. Therefore the subsequent addition of persons to the class of electors having different qualifications from those possessed by electors at the time the Jury Commissioners act was passed requiring the jury list to be selected from the list of electors did not have the effect to make the electors so added, having different qualifications from those required of electors at the time of the passage of the Jury Commissioners act, eligible to be selected for the jury list. The same principle does not apply to the construction to be given to the change in the qualification of electors for voting at elections for the organization of high school districts. That was concerned directly with the qualification of the elector as an elector. It dealt only with the right to vote—nothing else; and whatever may have been the power to restrict that right was swept away by the nineteenth amendment, leaving the unrestricted right to vote to men and women alike. On the other hand, the right of the General Assembly to restrict, abridge, deny or enlarge the right and duty of jury service cannot be denied.

An act entitled, "An act to legalize the organization of certain high school districts," was passed by the legislature and approved by the Governor on May 10, 1921. (Laws of 1921, p. 797.) It purports to legalize the organization and acts of all community high school districts where a majority of the inhabitants of any contiguous territory voting on the proposition have voted at an election called for the purpose by the county superintendent in favor of the organization of such territory into a community high school district and where at a subsequent election similarly called and held a board of education has been chosen for such district. Section 8 of the act provides: "Whereas, an emergency exists, therefore this act shall be in full force and effect from and after its passage and approval." It was passed and approved on May 10, 1921, four days before the election for the organization of this district. If it went into effect on that day it does not apply to the district. It is contended by the appellees that it did not become effective until July 1, 1921, and therefore applies to the election of May 16, resulting in favor of the organization of the district. In *Graham* v. *Dye,* 308 Ill. 283, the Illinois Securities act of 1919 was the basis of the cause of action. It was passed on June 10, 1919, with an emergency clause, the same as the curative act of May 10, 1921. The transaction which was the basis of the action occurred on June 27, 1919, and the defendant insisted that the act did not apply to the transaction because the act did not go into effect until July 1. It was held that the emergency clause was invalid because it failed to state what the emergency was, and the act did not, therefore, go into effect until July 1 following its passage. The same rule applies to this case.

The judgment of the circuit court was right. It is affirmed.

*Judgment affirmed.*